TRAVELERS FIRE INSURANCE Co., et al. *v.*
THE BANK OF NEW ALBANY, et al.

No. 42438          November 5, 1962          146 So. 2d 351

*Lumpkin, Holland & Ray,* Tupelo; *Watkins & Eager, Jackson,* for appellants.

*B. N. Knox, Jr., Hugh N. Clayton,* New Albany, for appellees.

Etheridge, J.

The principal question in this case pertains to a waiver by an insurance agent for his principals of a vacancy or unoccupancy clause in fire insurance policies on commercial property. Mrs. Merita Johnson, administratrix of the estate of B. W. Johnson, deceased, and the Bank of New Albany, mortgagee, brought this action as an attachment in chancery (Union County) against the Standard Fire Insurance Company of Hartford, Conn., four other insurance companies, and Wilbanks Insurance Co., their general agent. They sought recovery on fire insurance policies covering a dimension mill in New Albany. Defendants pleaded violation by insured of the vacancy or unoccupancy clause of the policies. Finding waiver and mutual mistake, the chancery court entered a decree for complainants.

The insurance policies contained these provisions: "Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured; or

(b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days; . . ."

B. W. Johnson died intestate in 1956. His widow, Mrs. Merita Johnson, was appointed administratrix. Before his death they lived in Memphis. In April 1960, his widow moved to Huntsville, Alabama. At Johnson's death there was an outstanding debt on the property, and in 1958 and 1961 the chancery court permitted Mrs. Johnson to refinance it by a loan from the Bank of New Albany. She was authorized to lease the dimension mill, part of Johnson's estate, to Benefield for the last four months of 1956, and for the year 1957, but Benefield stopped operation of the mill on September 1, 1957. After that he moved lumber and other items, and gave up possession at the end of 1957. The mill was used to produce from hardwood handles, golf clubs, and related items.

Fire insurance on the property was written by Wilbanks Insurance Agency, operated by W. C. Wilbanks, of New Albany, the admitted general agent of the five insurance companies. Mrs. Johnson, as administratrix, placed the original policies in the amount of $10,000 through Wilbanks in August and September 1956. The clerical staff at the agency each year would automatically prepare renewals and obtain Wilbanks' signature on them. Shortly after her husband's death, Mrs. Johnson went to Wilbanks to place the insurance. She and her husband had always done business with Wilbanks, and copies of the renewals were either mailed or handed to her by Wilbanks. Renewals were issued to Mrs. Johnson in August and September 1957, and again in 1958.

The mill was never operated after September 1957. Wilbanks, who drove by the property and saw it frequently, was well aware of this at the time he issued annual renewals on all of the defendant's policies in

August and September 1958. The property was destroyed by fire during the night of June 19, 1959.

During the years 1958 and 1959 Mrs. Johnson found it necessary to come to New Albany frequently. On most of these occasions she went to the office at the mill to get business papers. She did not have a watchman at the mill, and it was not under a complete fence. She did not know there had been two sawdust fires outside the building in February 1959, nor did she know that on at least two occassions trespassers or hoboes had been ordered to leave the property.

Wilbanks testified as to the method of renewal of the policies. The premiums, aggregating $963.28, (which appellants tendered in their cross-bill to cancel), were paid by Mrs. Johnson. When Wilbanks delivered policies in August and September 1958, and received the premiums, he knew the plant was not operating, and was aware of its general situation. Wilbanks said he considered the policies in force and effect; that he did not consider it unoccupied so as to suspend coverage.

The chancery court found that Wilbanks was the general agent of the companies. The mill was not in operation from September 1957 until the fire on June 16, 1959, but it and all of its equipment was kept in place to the time of the fire. Wilbanks knew the mill was not in operation, and knew this when the renewals were written and premiums paid on them. He intended to cover fully the mill and its equipment, although it was not in operation. Insured did everything she could do to keep the property covered by insurance, and Wilbanks did the same and intended to cover the mill. Mrs. Johnson relied on that fact, so the court held that defendants had waived the vacancy or unoccupancy clause; and, because of this mutual mistake, complainants were entitled to have the policies reformed to reflect the true intention of the parties. The evidence failed to show any increased hazard within the control or knowledge of

insured. Hence the final decree awarded complainants judgment against the defendants for the principal amount of the five insurance policies, aggregating $10,000 plus accrued interest, and reformed them by striking the vacancy or unoccupancy and increased hazard clauses. Defendants' cross bill, seeking cancellation and redelivery of the policies, was dismissed.

It is undisputed that the insurance companies through their agent had knowledge of the vacancy and unoccupancy of the mill property when the contracts of insurance were effected in August and September 1958. The question is whether this knowledge when the contracts were issued constituted a waiver by them of the vacancy or unoccupancy clause. We think it did. The general rule is summarized in 29A Am. Jur., Insurance, Sec. 917: ''As to the effect of the insurance company's knowledge of an existing vacancy on the question of waiver, the weight of authority supports the view that if an insurance company has knowledge through its agent, when a contract of insurance is effected, that the premises are vacant or unoccupied, the issuance of the policy waives any provision as to vacancy or unoccupancy, at least so far as the existing vacancy is concerned.''

Some cases hold that mere knowledge on the part of the insurer's agent that the insured premises are vacant at the time the policy is written will not waive the vacancy clause, but this is qualified by saying this rule applies at least where there is no agreement or proof of expectation that the premises are to remain vacant beyond the period permitted by the vacancy clause. *Ibid.*, Sec. 917. Conley v. Queen Ins. Co., 256 Ky. 602, 76 SW 2d 906, 96 A. L. R. 1255 (1934), cited by appellants, applied that limited rule, which is consistent with what we hold here.

In Home Ins. Co. of N. Y. v. Scales, 71 Miss. 975, 15 So. 134 (1894), the house was occupied when the in-

surance policy was issued, and subsequently became vacant. The Court held the policy was ineffective, but observed that if the agent "had done anything in his capacity as agent, after the house was unoccupied, to mislead the insured, the case would be different, but nothing of that sort occurred." Home Ins. Co. v. Hardin, 162 Miss. 254, 139 So. 603 (1932), followed *Scales*. The house was occupied by a tenant when the policy was written and delivered, and subsequently became vacant.

Aetna Ins. Co. v. Lester, 170 Miss. 353, 154 So. 706 (1934), necessarily modified *Scales* and *Hardin*, although it did not refer to those cases. In *Lester* fire insurance was issued on a house at a time when it was vacant and had been vacant for several months. The insurance agent knew of the vacancy at the time of delivery of the policy, and told the owner that the insurance would be kept up on the property. What is now Miss. Code 1942, Rec., Sec. 5706, making a general insurance agent the representative of his companies for acts done, warranted the jury in finding that the company through its agent waived the vacancy clause and was estopped to assert the contrary. See Bankers Fire & Marine Ins. Co. v. Dungan, 240 Miss. 691, 128 So. 2d 544 (1961).

The applicable principle must be derived by reading *Lester* along with *Scales* and *Hardin*. The rule thus derived may be stated as follows, and it is in accord with the general weight of authority: If an insurance company has knowledge through its agent, when the contract of insurance is affected, that the premises are vacant or unoccupied, the issuance of the policy waives any provision as to vacancy or unoccupancy, so far as concerns the existing vacancy, either where there is an agreement with the agent that the property will be insured, or evidence of a reasonable expectation by the insured through his agent that the premises are to remain vacant beyond the period permitted by the vacancy or unoccupancy clause. 29A Am. Jur., Insurance, Sec.

917; Anno., 96 A. L. R. 1259 (1935); 45 C. J. S., Insurance, Sec. 726(f), pp. 730-731; Secs. 555, 682.

■ ■ It is generally for the jury or other trier of fact, as here, to decide whether there has been a waiver of conditions of vacancy or unoccupancy of the insured premises. 22 Appleman, Insurance Law and Practice (1947), Sec. 13004; 16 Appleman, *ibid.*, Sec. 9214; 4 Appleman, *ibid.*, Sec. 2844. The cited texts discuss in detail the many cases on this point. Recent decisions are McCaleb v. American Insurance Co., 205 Tenn. 1, 325 SW 2d 274 (1959), and Peoples Indemnity Ins. Co. v. Mashburn, 345 SW 2d 922 (Ark. 1961). The fact that coverage was suspended sixty days after the renewals were issued does not abrogate application of the doctrine of waiver. The factual and equitable basis for it exists whether the procedure is called suspension or forfeiture.

Mississippi cases on related issues support application of this rule. Hartford Fire Ins. Co. v. Clark, 154 Miss. 418, 122 So. 551 (1929), found waiver by an insurance agent of an unconditional ownership clause. St. Paul Fire & Marine Ins. Co. v. Loving, 163 Miss. 114, 140 So. 727 (1932), held there was waiver of errors in description of an insured automobile. Liverpool & London & Globe Ins. Co. v. Delaney, 190 Miss. 404, 200 So. 440 (1941), held there was a waiver by an insurance agent of the other insurance clause in a fire policy on a house. Buffalo Ins. Co. v. Borden, 211 Miss. 47, 50 So. 2d 895 (1951); Camden Fire Ins. Assn. v. Koch, 216 Miss. 576, 63 So. 2d 103 (1953); Continental Ins. Co. v. Thrash, 223 Miss. 344, 78 So. 2d 344 (1955); see also Liverpool & London & Globe Ins. Co. v. Eagle Cotton Oil Co., 140 So. 2d 562 (Miss. 1962).

Appellants seek to use the doctrine that waiver and estoppel cannot operate to change the terms of a policy, so as to cover additional subject matter and extend the coverage. Maryland Casualty Co. v. Adams, 159 Miss. 88, 131 So. 544 (1931); Hartford Acc. & Indem. Co.

v. Lockard, 239 Miss. 644, 124 So. 2d 849 (1960); Employers Fire Ins. Co. v. Speed, 242 Miss. 341, 133 So. 2d 627 (1961). However, waiver of the vacancy or unoccupancy clause here does not extend coverage of the policies to property not covered by them. The mill was the property described in the contract of insurance.

■ ■ Defendants pleaded there was a violation of the increased hazard clause ''within the control or knowledge of the insured''. The chancery court found defendants' evidence did not support this affirmative defense. This was an issue of fact for the trial court. Phoenix Ins. Co. v. Haney, 235 Miss. 60, 108 So. 2d 227 (1959); Frisby v. Central Mutual Ins. Co., 238 Miss. 538, 119 So. 2d 382 (1960).

Since defendants were properly held to have waived the vacancy or unoccupancy and increased hazard clauses, it is not necessary to consider whether there was a mutual mistake of fact to support reformation of the policies. The decree reached the right result on the basis of waiver.

Appellants are entitled to have returned to them the premiums previously deposited by them in the chancery clerk's office under order of the trial court. In sum, the decree of the chancery court is affirmed, as amended by an adjudication and direction that the premiums deposited in the register of the court, $963.28, shall be returned to appellants.

Affirmed as amended.

*McGehee, C. J.,* and *McElroy, Rodgers, and Jones, JJ.,* concur.