BOSTON INSURANCE COMPANY, et al. *v.*
JOHNESS REALTY COMPANY, INC.

No. 43808      February 14, 1966      183 So. 2d 180

*P. D. Greaves, J. C. Seaman, Jr.,* Gulfport, for appellants.

*Gex, Gex & Phillips,* Bay St. Louis; *Harmon W. Broom,* Jackson, for appellee.

BRADY, TOM P., J.

This is an appeal from the judgment of the Circuit Court of Hancock County based upon a claim or suit by the appellee under three policies of insurance issued one each by each of the three appellants herein. The claim or suit was based upon a fire loss which occurred on October 20, 1961, when a building and the contents thereof owned by the appellee were totally destroyed by fire. The total amount of coverage afforded by the three policies was $6,500.00.

At the conclusion of appellee's case, appellants made a motion for a directed verdict which was overruled, and the appellants then rested. The case was submitted to the jury which returned the verdict in favor of the appellee in the full amount sued for of $6,500. A motion for a judgment non obstante veredicto, or, in the alternative, for a new trial, was overruled.

From this judgment and order of the circuit court, this appeal is prosecuted.

Appellee concedes that the statement of pleadings which appears in the appellants' brief is a fair statement covering the pleadings which were filed in the circuit court and which are here on appeal. These facts tersely stated are as follows:

"This proceeding was instituted by the Appellee herein filing his declaration in the Circuit Court of Hancock County, Mississippi, in the May, 1963 Term, to recover under three policies of insurance issued on each by each of the three named defendants. A building owned by the Appellee and insured by two of the Appellants and which contained furniture, fixtures, etc. and which was insured by the other Appellant was totally destroyed by fire on October 20,

1961. The Appellee sued each of the three insurance companies on their respective policies of insurance to recover the face amounts of all three of said policies. The defendants, the Appellants herein, each filed its separate answer in which each admitted the existence of its policy of insurance sued on and admitted that it had not paid the plaintiff for the loss and affirmatively averred that its policy provided that that insurance company should not be liable for a loss occurring while the building was vacant or unoccupied beyond a period of sixty (60) consecutive days and further averred that the said building was vacant and unoccupied beyond said period of sixty (60) consecutive days preceding the date of the fire and that, therefore, the said insurance coverage otherwise provided was not in force and effect at the time of said fire.

The record discloses the following cardinal facts:

The property in question was purchased by Johness Realty Company, Inc. in August 1956. Insurance coverage was placed on the building, together with the contents thereof, with the Merchants Fire Assurance Corporation agency, Katherine E. Jordy, a local agent in Bay St. Louis, Mississippi. The record disclosed that the policies of insurance upon which the suit is based were renewal policies. The property in question which was insured was a restaurant and bar. Some twenty, to fifty, to seventy-five feet away was located the keeper's cottage which was also owned by the Johness Realty Company, Inc. and was located on the same lot of land. The building was fully equipped to be operated as a restaurant for the purpose of serving food and was not equipped for lodging of any type. The record does not indicate that it was or had ever been used as a lodging.

The Johness Realty Company was operated by Mr. Allen Johness who testified that one, Mr. Stanley Carvin, was employed by the Johness Realty Company first at

a fixed salary of $100 for some period of time and, subsequently, without a salary. Mr. Carvin occupied the cottage which was situated in close proximity to the restaurant or bar. At the time of the fire, Mr. Carvin was not a paid employee of appellee, receiving no monetary consideration, but he was given free rent and the use of the cottage. He had control of the grounds and the pier in front of the restaurant and bar, and he had complete custody and control over the restaurant and bar in that he was in charge of the keys, and he had use of the grounds and the pier in front of the restaurant. The record discloses that at times he had stored his rod and reel in the restaurant, and that he had worked on fishing tackle therein when the weather was bad; he had use of the pier for the purpose of renting his boat, selling bait, and doing commercial business in renting fishing tackle and related lines. The cottage in which Mr. Carvin lived was not destroyed or injured in the fire. The appellee placed two witnesses on the stand, one was Mr. Allen Johness ·and the other Mr. Stanley Carvin. Both testified in substance to the noted facts.

In addition to renting the pier and the selling of bait, and renting of skiffs, Mr. Carvin sometimes launched boats off the seawall in front of the restaurant and bar.

At the conclusion of the two witnesses' testimony, appellee rested his case and appellants made the motion for a directed verdict for the insurance companies involved assigning as reasons therefor — (1) the proof adduced on behalf of the plaintiff failed to bring the cause of action within the provisions of the policies of insurance sued upon, and (2) the proof is inconclusive to the fact that for more than sixty consecutive days prior to the fire in question the building which burned was vacant or unoccupied.

The lower court overruled the motion at which time the appellants declined to plead further or to offer any testimony; both sides rested their case. Sufficient and accurate instructions were given the jury, and no complaint is made here of the instructions which were granted. The case was submitted to the jury which returned a verdict for the appellee for the full amount of the policies of $6,500.

After appellants' motion for a judgment non obstante veredicto, or, in the alternative, for a new trial had been overruled by the trial court, this appeal was prosecuted.

The errors assigned by the appellants, in substance, are as follows:

1. The trial court erred in failing to sustain the motion of the defendants below, appellants here, for a directed verdict;

2. The trial court erred in failing to sustain the motion of the appellant, defendants below, for a judgment non obstante veredicto; and,

3. The court erred in failing to grant a new trial.

It is obvious that if the first error assigned, namely, that the trial court erred in failing to sustain a motion for a directed verdict is well-taken, then the other errors are automatically disposed of for the reason that the second and third errors assigned are each dependent upon the validity of the first error.

The pertinent section of the insurance policy which applies is as follows:

". . . Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring.

(a) while the hazard is increased by any means within the control or knowledge of the insured; or

(b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days; . . ."

The basic question for consideration here is whether or not the testimony offered by the appellee is sufficient to establish the fact that the terms and restrictive conditions of the policy did not preclude recovery for the reason that the building was not vacant or unoccupied for a period of more than sixty days.

The first question therefore resolves itself into whether or not the acts of the caretaker were such as to constitute use and occupancy of the building, restaurant and bar. The record discloses that no business had been operated in the building that burned for several years prior to the fire. In addition, the record also shows that it had not been occupied during that time by anyone for any express purpose. As a matter of fact, Mr. Johness testified that there was no way for anyone to occupy it; that it was not large enough; that it was not equipped with a bed or living quarters. The nearest it came to being occupied as a building as such was in May or June 1960 at which time some people were going "to open up the place" and made some repairs at that time, but the record shows that they never moved in or utilized it because they relinquished their plans to open and operate the restaurant. This occurred many months before the fire.

Mr. Carvin testified that the building was entirely vacant and unoccupied during the full time since he went upon the premises and for many months prior to the fire except for the men who did the work on the building in May or June of 1960, and except for occasions when he went in there himself, or let someone else go in.

This witness testified that he did not make a habit of keeping his fishing gear in the restaurant, but occasionally he did put a rod or reel in the building and once in a while when the weather was bad he would go in there and work on his fishing tackle upon the tables

which were in the building. He further stated that that was the only reason that he had used the building.

The appellee asserts that the building was occupied because of the fact that there were articles of furniture, fixtures, and other equipment incidental and necessary to the operation of a restaurant located in the building. It is also urged that because the caretaker lived in a separate house or cottage hard by the building and on the premises that this too furnished the essential occupancy of the building in question.

The record fails to show when in time these instances to which Mr. Carvin testified took place, and there is no proof to show that any of these instances occurred within the sixty days immediately preceding the fire loss. Pro arguendo, we will assume that these instances did take place within the 60-day period of time and, therefore, we must next consider the fundamental question, and that is: Did these acts on the part of Carvin, under all of the circumstances, constitute such occupancy of the building as would make the appellants liable for the loss in spite of the conditions suspending or restricting insurance coverage under the policy?

This Court has heretofore decided three or more cases involving substantially this same question. The decisions in these cases are controlling here in all essential respects. Those cases are: Travelers Fire Ins. Co. v. Bank of New Albany, 244 Miss. 788, 146 So. 2d 351 (1962); Asher v. Old Colony Ins. Co., 240 Miss. 166, 126 So. 2d 255 (1961); and, Asher v. Birmingham Fire Ins. Co. of Pa., 239 Miss. 883, 125 So. 2d 824 (1961).

In Asher v. Birmingham Fire Ins. Co., supra, and Asher v. Old Colony Ins. Co., supra, we dealt with the exact question with which we are concerned here. In both of these cases which pertain to fire loss, the house that burned was not occupied and the policies of insurance covering these houses, just as in the case at bar, excluded coverage when the described property was

vacant or unoccupied beyond the period of sixty consecutive days. In both of these cases, the judgments for the insurance companies were affirmed and, in the *Asher* cases, the proof appears to be stronger in behalf of the plaintiff than it is for appellee in the case at bar.

In Asher v. Birmingham Fire Ins. Co., supra, it was shown that one witness and her husband who were tenants on the property lived in another house other than the one that burned. The witness, Easter Combs, testified that there was a bed in the house; that there were also some quilts, a couple of trunks, and other items, but that nobody had lived in the house for several years.

In the second case, Asher v. Old Colony Ins. Co., supra, plaintiff's attorneys attempted to have the chancery court reopen the cause to permit the husband of Easter Combs, one Johnny Combs, to testify to certain personal property he had kept stored in the house and that he and his wife had spent at least two nights there during the 60-day period immediately before the fire; that he was looking after the property as a caretaker during the 60-day period; and, that he was entitled to introduce certain documents which permitted the use and care of the property by a caretaker. The chancery court refused to permit this, and we pointed out that the chancellor did not abuse his discretion in not permitting a reopening of the case. We stated in that case as follows:

"And especially in view of the fact that it appears from the record that the testimony of this witness would have been cumulative to that which the chancellor had already heard from the wife of the witness, who would naturally have known the same facts in regard to their alleged occupancy of the house within the 60 day period involved. Her testimony was undisputed and therefore did not need to be supplemented. We do not think that her testimony or the testimony later set forth in the motion filed on No-

vember 5, 1959, proposed to be made by her husband would have sustained the right of the appellant to a recovery in this case under all the facts and circumstances. 240 Miss. at 175, 126 So. 2d at 256.

In that case it is apparent that there was testimony that the house had actually been slept in for at least two nights during the 60-day period immediately preceding the fire which would have been the same within which the vacancy would have been applicable. In the case at bar there is no positive testimony that anyone had slept in the building or had lived in the building, or had utilized the building equipped and furnished for use as a restaurant and bar in any manner except in the very limited degree and on the few occasions testified to by Carvin. As to when or on what dates this sporadic use took place, the record is silent. Repairs which were made could have been made many months before the 60-day period of time because the record does not disclose when they were made, but the record does indicate that the building had not been occupied and had been vacant for more than the 60-day period of time.

In the *Asher* cases, supra, there was evidence leading to an application for a vacancy permit which had been requested, but the request was made subsequent to the time of the fire. Asher also inquired of the insurance company's agent, a year or more before the policy was written, with reference to a necessity for a vacancy permit on some Jackson property, and was advised that such a permit was not required. The chancellor held in the case of Asher v. Old Colony Ins. Co., supra, that he was unable to see how appellant could have been misled by that conversation to believe that a vacancy permit would not be needed on the property which was subsequently burned. In the case at bar, there is no intimation that a vacancy permit was ever considered

and, finally, there is no proof that anyone could have influenced or misled appellee in this regard.

While both briefs in this case are well prepared, the appellee's brief, based upon the forthright and sincere testimony, presents a searching, thorough digest of related authorities. Appellee, in the alternative, urges that the appellants knew through their agent, who, in turn, must have known, that the building was unoccupied and therefore there was a waiver on the part of the insurance company of the vacancy and unoccupancy clauses. This was held to be true in the *Travelers* case, supra, but it is not true in this instance.

In Aetna Ins. Co. v. Lester, 170 Miss. 353, 154 So. 706 (1934), we pointed out that the evidence was sufficient to have warranted the jury's finding for the plaintiffs. We held that where one was entrusted by the insurer with delivery of a policy written by its agent and delivered with knowledge that the insured property was vacant, and who had agreed to keep the property insured, which was relied on by the plaintiff, the insurance company could not escape liability in spite of the fact that the property was vacant. The insurance company was bound by the acts of the agent whose knowledge and statement at the time of delivery showed that he knew that the building was vacant and unoccupied.

The cases cited in the *Lester* case, supra, clearly outline our decisions with reference to knowledge on the part of an agent imputable to the master-insurer.

There is nothing in the policy to justify the conclusion that since the cottage was occupied that that occupancy would spread to or include occupancy and use of the restaurant and bar. The terms and conditions of the policy of insurance pertaining to the described building are clear and unambiguous. The decisions of this Court are also clear and distinct. We find nothing in the record which would take this case from out the rule of

law which has been announced in the cases cited above.

Though at times tempting, interlineal interpretation, which is beyond review, is taboo. We are confined strictly to the record. The proof as disclosed by the record is insufficient to establish that the appellants knew through their agent that the building in question was vacant at the time the policies were issued, or that it was vacant or unoccupied at the time of the fire. It follows, therefore, that the lower court committed fatal error in not granting the appellants the directed verdict, but, instead, submitted to the jury a determination of this question of law. It follows also that having committed this error, the trial court should have granted the appellants a judgment notwithstanding the verdict of the jury. In failing to do this and to grant appellants a new trial, the trial court erred.

█ █ The burden was upon the plaintiff to prove his case by a preponderance of the evidence and this prerequisite appellee's proof failed to do. The record failed to show that the vacancy and unoccupancy of the property was known to the agent and, therefore, was not imputable to his master, the insurer. This being true, there could not be any waiver on the part of the insurer-appellants. It follows, therefore, that this cause must be and hereby is reversed and judgment entered for appellants.

Reversed and judgment for appellants.

*Gillespie, P. J., and Rodgers, Inzer and Smith, JJ.,* concur.