FUTURE REALTY, INC., Plaintiff,

v.

FIREMAN'S FUND INSURANCE COMPANY, Defendant.

Civ. A. No. 3818.

United States District Court,
S. D. Mississippi, S. D.

March 9, 1970.

Knox Walker, Gulfport, Miss., I. Jay Krieger, New Orleans, La., for plaintiff.

Thomas H. Watkins, Jackson, Miss., Clyde Hurlbert, Biloxi, Miss., for defendant.

## MEMORANDUM OPINION

NIXON, District Judge.

This is a diversity suit filed by plaintiff, a Mississippi corporation, against an incorporated California insurance company in the amount of $19,594.00 allegedly due under the terms of a fire insurance policy issued by defendant to plaintiff, insuring for a period of three years [September 13, 1967 to September 13, 1970 (Exhibit P-3)], plaintiff's therein described block and frame build-

ing situated on West Beach, Biloxi, Harrison County, Mississippi against fire and other perils in the amount of $25,000.00.

During the early morning of March 25, 1969, the plaintiff's frame building described in defendant's policy was partially damaged by fire of an unknown origin in the amount of $12,468.34, reasonable costs of repair and replacement of material of like kind and quality, applying reasonable depreciation (Ex. D-1).

Plaintiff contends that it is entitled to payment by the defendant under the terms and provisions of the issued policy inasmuch as the described building was partially damaged by fire, an insured risk; the fire occurred during the three year term of the policy; and the premium was paid. The defendant, in denying plaintiff's right to recover for the fire loss, contends that at the time thereof, March 25, 1969, coverage afforded by the policy sued on herein was suspended under the terms and provisions thereof for two reasons: (1) because at the time of the fire the building described in the policy had been vacant or unoccupied beyond a period of sixty consecutive days, and/or, (2) the moral and physical hazard had been increased by means within the control or knowledge of the insured.

The policy in question contained, among others, the following provisions:

"Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring

"(a) While the hazard is increased by any means within the control or knowledge of the insured; * * *

"(b) While a described building, whether intended for occupancy by owner or tenant is vacant or unoccupied beyond a period of sixty consecutive days; * * *"

Therefore, the issue to be resolved by this Court, which has jurisdiction over the parties and the subject matter hereof, is whether at the time of the fire loss of March 25, 1969, coverage afforded by the policy in question was suspended under either of the above quoted terms and provisions thereof.

The building in question, which is referred to as "Chez Joey", which was the name of the last business operated therein prior to the fire, was constructed approximately ten or twelve years ago. At the time of the issuance of the insurance policy sued on herein on September 13, 1967 the subject premises were occupied and used partly as a beverage parlor wherein intoxicating liquors were sold, and partly as living quarters or apartments. On March 12, 1968, plaintiff leased the premises to Julia M. Mauffray by written lease for a period expiring January 1, 1973. However, Julia Mauffray vacated the premises in the early part of October, 1968, and this building remained vacant or unoccupied by anyone with no one living therein or conducting any business therein between that date and the date of the fire. Plaintiff's President, Samuel B. Katz, in testifying herein admitted to the "truthfulness" of the statement which he gave to the defendant's adjuster on April 11, 1969, that "* * * The building was vacant from November 1, 1968 until now * * *" (See Ex. 2 and 3 to Ex. D-5; and Response to Request No. 2 in Ex. D-6.) On October 5, 1968 gas service to the subject premises was disconnected and electric or power service thereto was discontinued on October 7, 1968. The premises was not thereafter served by either gas or electricity at any subsequent time and prior to the fire on March 23, 1969 (Ex. D-3 and 4).

Nothing of significance transpired with reference to the subject premises until a few days before the fire when, through the efforts of Robert A. "Bobby" Bennett (a former practicing attorney in Biloxi, Mississippi, first cousin of the President and stockholder of plaintiff, Samuel B. Katz, and brother of Bernard J. Bennett, Secretary-Treasurer and 50% stockholder in the plaintiff corporation), Katz and one Troy Garri-

ga, a nightclub owner and convicted felon, allegedly agreed over long distance telephone to enter into a lease arrangement which was to be, but never was because of the fire, reduced to writing and was to begin on April 1, 1969 or seven days subsequent to the fire. According to Katz, this was to be a two-year lease, although Garriga stated it was to be a one-year lease with an option to renew for two years. The agreed rental, according to Katz, was to be $315.00 per month, but according to Garriga, was to be $315.00 per month for the first year with an increase of $25.00 per month for the remainder thereof. In this telephone conversation, Katz instructed his cousin, Robert Bennett, also a convicted felon, to accept ten dollars from Garriga as a deposit on the first month's rent, to give a receipt therefor, and to turn over the building keys to Garriga, all of which was accomplished at that time. Garriga was to open and operate a bar or lounge, utilizing the first floor of the two story frame building in question. He employed a part-time Biloxi fireman, Hudson Joseph Migues, who was already working as a "security guard" at one of Garriga's other nightclubs or lounges to "clean-up" the inside of the building. In the early morning of March 24, 1969, the day before the fire, Migues, his wife and another person, using the keys which had been delivered to them by Garriga, unlocked the front door, and entered "Chez Joey". They found that the back door to this building had been pried open at some previous time and was unlocked. The two air conditioning units, one on the east side and one on the west side of the building had been removed leaving two openings into the building, each of which was approximately two and one-half feet long and 18 to 20 inches wide located five and one-half feet off the ground. In addition, they found a great amount of debris, including trash, empty wine bottles, newspapers and a tramp or vagrant sleeping under two blankets on the second floor. They proceeded to do some cleaning after having purchased wax and concluded

their work for the day after a few hours, having entered the building, according to Migues' testimony, at approximately 9:00 A.M., although he previously testified under oath in his deposition that they had entered the building between noon and 1:00 P.M. The only furnishings inside the building at the time of the fire were a bar or counter, a bandstand and a few old chairs. The Court further finds, in accordance with the testimony of John Worwell, Jr., who worked at a service station located approximately ten feet north of the "Chez Joey", that this building had not been used or occupied by anyone "between Christmas time and the time of the fire" and that on four to six occasions he saw vagrants or tramps entering the building through the upstairs door on the west side, caused him to fear that a fire might be started therein close to his service station.

The Court finds, based upon the testimony of Norman W. Cowart, Deputy Fire Marshal of the State of Mississippi, H. T. Busby, Special Agent of the Fraud and Arson Department of the American Insurance Association, George Pete Clegg, Long Beach, Mississippi Fire Department Chief, and James O. Ness, Fireman of the Biloxi Fire Department, who helped fight the fire in question, and all of whom are well qualified experts in this field, that there were three separate unrelated fires, which were not accidentally set, burning inside the building. One fire originated near the end of the bar or counter, one originated near the top of the bar in a different area thereof, and the third originated between the ceiling and false ceiling separating the first and second floors in the middle of the building some distance away from the other two. This Court further finds in accordance with the testimony of all these witnesses that there was a great deal of debris, including papers and rags, found on the first and second floors of this building shortly after the fire, in addition to empty wine bottles. When the State Deputy Fire Marshal and the Special Agent of

the American Insurance Association were finally able to contact Troy Garriga after having made several unsuccessful efforts to do so, he refused to discuss the fire or any aspect thereof with these witnesses, and, after initially denying that he had ever seen them or talked to them, finally admitted that they perhaps could be the two gentlemen who called on him, but denied that he refused to discuss the fire with them but merely told them he was late for a dental appointment or some other appointment.

■ The first question which this Court must resolve is whether the coverage of the policy issued by defendant to plaintiff on September 13, 1967 insuring the burned premises for three years in the amount of $25,000.00 against fire and other perils and upon which the premium was paid, was suspended by virtue of the fact that the building was vacant or unoccupied beyond the period of sixty consecutive days immediately prior to the fire of March 25, 1969.

In its post-trial brief filed with the Court plaintiff principally relies on the opinion of the St. Louis, Missouri Court of Appeals rendered on June 14, 1963 in the case of Limbaugh v. Columbia Insurance Company of New York, 368 S.W.2d 921, in which it was held that a building which had been used as a recreation hall and package liquor store by the insured until he lost his liquor license, was not vacant within the fire policy provision that an insurer shall not be liable for loss occurring while the building was vacant or unoccupied beyond the period of sixty consecutive days at the time of fire, where fixtures and stock of merchandise were still in the building at the time of fire and the insured and another person worked in the building to prepare it for the other person to rent within the sixty day period and in which they were present several times late at night attempting to catch boys who had been breaking into the building. This Court finds the facts of the Limbaugh case to be distinguishable from the facts of the

instant case inasmuch as here there was no stock of merchandise in this building, there had been no effort on the part of anyone to detect and apprehend vagrants or tramps who were openly seen going in and out of this building by the operator of a nearby service station, where air conditioning units had been removed from the building leaving gaping holes providing free access by anyone to the building, where the back door of this building had been pried open sometime before the fire, where the upstairs door was apparently open, permitting anyone to enter, and where a large amount of debris, including rags and paper, were found not only the day before the fire but immediately after the fire. In any event, if the facts of the instant case were not distinguishable from those in Limbaugh, this Court would decline to follow Limbaugh in view of the authorities hereinafter cited and discussed.

In Home Insurance Company v. Hardin, 162 Miss. 254, 139 So. 603 (1932), the Mississippi Supreme Court held that the fact an owner had contracted with a person to occupy the premises did not constitute occupancy within the meaning of the policy, stating:

"The insured owner did not learn of the vacancy until January 13, 1931, and on that day he contracted with another tenant to occupy the premises, but, before the new tenant had actually moved into the dwelling, or had accomplished the occupancy, the fire occurred which destroyed the property."

This Court recognizes the fact that a dwelling or home was involved in the Home Insurance case where as a business or commercial establishment is involved in the instant case, which of course would normally require a different test to establish occupancy; nevertheless, the same legal principle applies.

In the leading cases of Asher v. Birmingham Fire Insurance Company, 239 Miss. 883, 125 So.2d 824 (1961) and Asher v. Old Colony Insurance Company, 240 Miss. 166, 126 So.2d 255 (1961), which arose out of the same fire, the

Mississippi Supreme Court held that as a matter of law no one had occupied the burned house between the time that the last tenant died on February 17, 1958 and the date of the fire, June 6, 1958, despite the fact that certain personal property had been stored therein and the caretaker had spent at least two nights in the premises during the preceding 60 days.

In Home Insurance Company of New York v. Scales, 71 Miss. 975, 15 So. 134 (1894), the Mississippi Supreme Court, in denying coverage, stated the following:

> "The house had been rented, and, when insured, was occupied by merchants. They moved out, abandoning the house as their store, in August.
>
> \*    \*    \*    \*    \*    \*
>
> "They left a few empty molasses barrels, some old boxes and papers in the house, and they had the key—not surrendered to the agent of the owners, because he told them they could keep it until another tenant came. This was not such occupation of the house as the policy required, no matter what Hibbler or anybody else may have thought. \*  \*  \*"

In a case involving facts similar to the case at bar, Boston Insurance Co. v. Johness Realty Co., 254 Miss. 512, 183 So.2d 180 (1966), the Mississippi Supreme Court, in holding as a matter of law that a commercial building used as a restaurant and bar was vacant or unoccupied within the meaning of the policy, despite the fact that it was fully equipped for that purpose and that a caretaker who resided only 50 feet therefrom in another building was in and out of this building from time to time, the Court said:

> "The appellee asserts that the building was occupied because of the fact that there were articles of furniture, fixtures, and other equipment incidental and necessary to the operation of a restaurant located in the building. It is also urged that because the caretaker lived in a separate house or cottage

hard by the building and on the premises that this too furnished the essential occupancy of the building in question.

> "The record fails to show when in time these instances to which Mr. Carvin testified took place, and there is no proof to show that any of these instances occurred within the sixty days immediately preceding the fire loss. Pro arguendo, we will assume that these instances did take place within the 60-day period of time and, therefore, we must next consider the fundamental question, and that is: Did these acts on the part of Carvin, under all of the circumstances, constitute such occupancy of the building as would make the appellants liable for the loss in spite of the conditions suspending or restricting insurance coverage under the policy?

> "This Court has heretofore decided three or more cases involving substantially this same question. The decisions in these cases are controlling here in all essential respects. Those cases are: Travelers Fire Ins. Co. v. Bank of New Albany, 244 Miss. 788, 146 So.2d 351 (1962); Asher v. Old Colony Ins. Co., 240 Miss. 166, 126 So.2d 255 (1961); and, Asher v. Birmingham Fire Ins. Co. of Pa., 239 Miss. 883, 125 So.2d 824 (1961).

> "In Asher v. Birmingham Fire Ins. Co., supra, and Asher v. Old Colony Ins. Co., supra, we dealt with the exact question with which we are concerned here. In both of these cases which pertain to fire loss, the house that burned was not occupied and the policies of insurance covering these houses, just as in the case at bar, excluded coverage when the described property was vacant, or unoccupied beyond the period of sixty consecutive days. In both of these cases, the judgments for the insurance companies were affirmed and, in the Asher cases, the proof appears to be stronger in behalf of the plaintiff than it is for appellee in the case at bar.

"In Asher v. Birmingham Fire Ins. Co., supra, it was shown that one witness and her husband who were tenants on the property lived in another house other than the one that burned. The witness, Easter Combs, testified that there was a bed in the house; that there were also some quilts, a couple of trunks, and other items, but that nobody had lived in the house for several years.

"In the second case, Asher v. Old Colony Ins. Co., supra, plaintiff's attorneys attempted to have the Chancery Court reopen the cause to permit the husband of Easter Combs, one Johnny Combs, to testify to certain personal property he had kept stored in the house and that he and his wife had spent at least two nights there during the 60-day period immediately before the fire; that he was looking after the property as a caretaker during the 60-day period; and that he was entitled to introduce certain documents which permitted the use and care of the property by a caretaker. The chancery court refused to permit this, and we pointed out that the chancellor did not abuse his discretion in not permitting a reopening of the case. We stated in that case as follows:

" 'And especially in view of the fact that it appears from the record that the testimony of this witness would have been cumulative to that which the chancellor had already heard from the wife of the witness, who would naturally have known the same facts in regard to their alleged occupancy of the house within the 60 day period involved. Her testimony was undisputed and therefore did not need to be supplemented. We do not think that her testimony or the testimony later set forth in the motion filed on November 5, 1959, proposed to be made by her husband would have sustained the right of the appellant to a recovery in this case under all the facts and circumstances.' 240 Miss. at 175, 126 So.2d at 256.

"In that case it is apparent that there was testimony that the house had actually been slept in for at least two nights during the 60-day period immediately preceding the fire which would have been the same within which the vacancy would have been applicable. In the case at bar there is no positive testimony that anyone had slept in the building or had lived in the building, or had utilized the building equipped and furnished for use as a restaurant and bar in any manner except in the very limited degree and on the few occasions testified to by Carvin."

\* \* \* \* \* \*

"The terms and conditions of the policy of insurance pertaining to the described building are clear and unambiguous. The decisions of this Court are also clear and distinct. We find nothing in the record which would take this case from out the rule of law which has been announced in the cases cited above."

\* \* \* \* \* \*

"The burden was upon the plaintiff to prove his case by a preponderance of the evidence and this prerequisite appellee's proof failed to do."

\* \* \* \* \* \*

"It follows, therefore, that the lower court committed fatal error in not granting the appellants the directed verdict, but, instead, submitted to the jury a determination of this question of law." 183 So.2d at 183–185.

The Mississippi decisions are buttressed by the general rule stated by one of the leading textwriters whose work on insurance law and practice has been widely accepted and quoted:

"Control and use of buildings by a tenant without living therein does not amount to occupancy. Thus, the fact that a tenant of insured and his servants had for two days before the fire been cleaning the premises preparatory to occupancy does not fulfill the policy requirements \* \* \*" Appleman, Insurance Law and Practice, Vol. 4A, Section 2839, p. 516.

\* \* \* \* \* \*

"The term 'occupied' has been considered to imply a continuing tenure for a period of greater or less duration and not to embrace a mere transient or trivial use; rather, a building would be considered to be occupied when it is put to a practical and substantial use for the purpose for which it is designed \* \* \*" \*Appleman, p. 519.

\*"47.75.   Dwelling or club house

"That building committee of club went to insured property to prepare plans to make building suitable for club purposes and that group had been permitted to use house for one night did not constitute use or occupancy either as dwelling or as clubhouse and fire insurer was not liable for any loss occurring during vacancy and non-occupancy.   G.S. § 58–176.   Winston-Salem Fire Fighters Club, Inc. v. State Farm & Cas. Co., 1963, 131 S.E. 2d 430, 259 N.C. 582."

It is undisputed that there was no occupancy or use whatsoever of the premises in question between the early part of October 1968 and the date of the fire on March 25, 1969; that gas and electricity had been disconnected and discontinued on October 5 and October 7, 1968, respectively; that no one resided in this building; and, that tramps or vagrants had been openly entering and utilizing it.   It is further undisputed that the alleged lease that would have been consummated in compliance with the Mississippi Statute of Frauds[1] was not to begin until April 1, 1969 or seven days subsequent to the fire; that there was no stock of any kind within this building but merely an old bar or counter, a bandstand and a few old chairs; that there was no activity being conducted therein between October, 1968 and the time of the fire.   The building was not occupied as of the date of the fire and, as stated above, plaintiff's president stated that the building had been vacant from October 1968 up until the time

that he gave his statement to the defendant's adjuster subsequent to the fire in question.

This Court therefore finds that under the facts of this case that plaintiffs failed to prove by a preponderance of the evidence that the building in question was occupied and thus not vacant during sixty consecutive days prior to the fire.   As a matter of fact, the proof of unoccupancy or vacancy of the premises since October 1968, including the last consecutive sixty days prior to the fire, preponderates and is overwhelming, thus suspending the coverage of this policy under the terms and provisions thereof.

In making the above determination, this Court has assumed as a fact that there was a valid lease agreement existing between plaintiff and Troy Garriga at the time of the fire on March 25, 1969, the terms and provisions of which were to take effect and begin on April 1, 1969, seven days subsequent to the fire. However, this Court is further of the opinion that a legal and valid lease agreement was never entered into between plaintiff and Garriga in view of § 832 of the Mississippi Code of 1942, Recompiled which provides:

"An estate of inheritance or freehold, or for a term of more than one year, in lands shall not be conveyed from one to another unless the conveyance be declared by writing signed and delivered."

It is admitted that no officer of plaintiff corporation nor any authorized representative thereof had entered into any written agreement with Garriga, and certainly there was no contention that any lease was ever signed by Garriga or plaintiff through any of its authorized representatives or anyone else.   There was some testimony by Robert Bennett who owned no stock in the plaintiff corporation and was not an officer thereof nor an authorized representative thereof that he had reduced the agreement with Garriga to writing but there was never

1.   Section 832, Mississippi Code of 1942, Recompiled.

any production of any such memorandum, nor of a receipt, and the Court finds and is of the opinion that such a memorandum or agreement never existed and rejects the testimony of these two witnesses to that effect. The Court is further impressed with the fact that Garriga refused to discuss his interest, if any, in the building in question with the Deputy State Fire Marshal after the fire.

In view of the above determination, it is unnecessary to consider whether the coverage of the policy of insurance was suspended by an increase in the moral and physical hazards at the time of the fire; nevertheless, for the sake of completeness that question will be decided at this time.

◼ Although this Court is not favorably impressed with defendant's argument that the risk was increased because the premises had been utilized as a bar and as a dance place for "Go-Go" Girls as late as October 1968, in view of the fact that at the time that the policy was written it was being utilized as a bar or lounge wherein intoxicants were sold openly with notice to all; nevertheless this Court finds that the physical hazard of fire had been greatly increased by plaintiff permitting the building to fall into a complete state of disrepair, failing to inspect or observe the premises, allowing the two large openings to remain in the sides of the building after the removal of air conditioning units therefrom, and failing to take any steps whatsoever to secure the building or to determine whether the second floor door and the back door were open or locked. It is undisputed that there was a large amount of debris accumulated therein in the way of newspapers, rags and other items; and that these premises were being freely and openly utilized by tramps or vagrants for a long period of time.

[3] In addition, the Court finds that the "moral hazard" had been increased by virtue of the fact that plaintiff learned that it could not build a high rise apartment building on this property, which was the purpose for which it had been purchased; that plaintiff's last tenant had been forced to discontinue operations on the premises because of the actions of law enforcement officers of the State of Mississippi and the plaintiff corporation had lost $3,590.43 on its operation of these premises during the year in which the fire occurred; and it had been unable to lease the premises since October, 1968.

"Moral hazard" has been defined to mean any change in the insured property that increases the probability of destruction by the owners or others. Phoenix Insurance Co. v. Haney, 235 Miss. 60, 108 So.2d 227 (1959); or as stated in Davenport v. Firemen's Insurance Co. of Newark, N. J., 47 S.D. 426, 199 N.W. 203:

"* * * what constitutes 'moral hazard' is a question of law and may be determined by the court. Moral hazard is the risk, the danger, or probability that the insured will destroy or permit to be destroyed the insured property for the purpose of collecting the insurance, and any change in the condition of the insured or the insured property that will increase the probability that the insured will destroy the property for the purpose of collecting the insurance will increase the moral hazard. Any act or change in the conditions that will increase the temptation to destroy the insured property for the purpose of collecting the insurance will increase the moral hazard."

Considering the above findings, the fact that three separate unrelated fires were burning simultaneously in three different parts of the premises, and the fact that the intended lessee Troy Garriga, a convicted felon, refused to discuss any aspects of this fire with the Deputy State Fire Marshal and the Special Agent of the American Insurance Association, this Court finds and is of the opinion that the moral hazard as well as the physical hazard of fire was increased to such an extent as to suspend

the fire insurance coverage afforded by defendant's policy issued to plaintiff.

The Court therefore is of the opinion that plaintiff failed to prove by a preponderance of the credible evidence its right to recover under the terms and provisions of this policy, but on the contrary, the evidence offered by the defendant overwhelmingly proves that the fire insurance coverage provided by the policy was suspended within the terms and provisions thereof for the foregoing reasons. Thus, plaintiff is not entitled to recover from the defendant herein. Plaintiff's suit against the defendant will be dismissed with prejudice at costs of plaintiff.

The foregoing memorandum opinion shall constitute the Court's findings of fact and conclusions of law as required by the Federal Rules of Civil Procedure.

A Judgment shall be presented to this Court by defendant within the manner and within the time prescribed by the Rules hereof.