Clifford **LIMBAUGH**, (Plaintiff) Respondent,

v.

**COLUMBIA INSURANCE COMPANY OF NEW YORK, Commercial Union Assurance Company, Limited, Fire Association of Philadelphia, Hanover Fire Insurance Company of New York, and Northern Assurance Company, Limited, (Defendants) Appellants.**

No. 31168.

St. Louis Court of Appeals.

Missouri.

June 14, 1963.

Motion for Rehearing or to Transfer to Supreme Court Denied
July 12, 1963.

Smith & Colson, Farmington, Willson, Cunningham, McClellan & Gunn, J. H. Cunningham, Jr., St. Louis, for appellants.

Charles W. Medley, McClintock & Medley, Flat River, for respondent.

WOLFE, Judge.

This is an action in which the plaintiff seeks to recover from each of the defendant insurance companies the pro rata share of a fire loss. Each of the companies had issued a fire insurance policy in the amount indicated by the judgment. There was a finding and judgment for the plaintiff against defendant Hanover Fire Insurance Company of New York for $1,000 and interest, and against each of the other four companies in the sum of $1,500 and interest. All of the defendants appealed.

The five defendant companies insured a frame building, occupied as a "recreation hall and package liquor store". The building was owned by the plaintiff, and he conducted his business there under the name of "61 Club". The defendant Hanover Fire Insurance Company of New York insured for $1,000, and the other defendants for $1,500 each. The policies were first issued in 1951, and renewal policies, which are the policies here litigated, were issued May 14, 1956. These policies bore the expiration date of May 14, 1961. On October 10, 1960, the insured building with its contents was destroyed by fire. The loss exceeded the insurance.

The insured property was located in St. Francois County, Missouri, and the plaintiff bought it in 1951. He then purchased fire insurance policies through two local agents and brokers by the names of T. J. Watkins and L. P. Ryal. These two decided that the owner needed $13,000 on the building, $3,000 on the fixtures, and $2,000 on his stock of merchandise. They divided the insurance equally between them. Mr. Watkins wrote $9,000 insurance for the plaintiff in three companies for which he was agent. Mr. Ryal wrote $2,000 insurance in a company for which he was agent, and he secured policies from the Holton Insurance Agency, in the total sum of $7,000, in the companies which are the defendants here.

All of the policies of the defendant companies had the following clause in them:

"Conditions suspending and restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss

occurring * * * (b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days;"

At the time the policies were issued, Limbaugh, the plaintiff, was operating the 61 Club as a "package place and setup place and night club". He worked there during the day and slept there at night as a matter of convenience, since his closing hour was 1:30 a. m. He did not live in the place and usually went home in the afternoon. He also employed help that was present when he was not there. This was his manner of operating the establishment until November 1, 1958, when his liquor license was revoked. On that date he closed the place, leaving in it all of the fixtures, furniture, and merchandise. He no longer slept there, but he did go to the building almost every day. At times he also went there at night, as he was trying to catch some boys who had been breaking in.

In August of 1960, plaintiff leased the place to a C. R. Copeland. Copeland was to start in business around September 1, but he became ill and was unable to do so. During the week before the fire, which occurred, as stated, on October 10, Copeland and the plaintiff had been doing some painting and cleaning up around the place. They worked three to four hours at a time. Copeland had also gone to the place with the plaintiff on two or four occasions at night to try to catch the boys who had been breaking in.

In obtaining the policies written by the defendant companies, the plaintiff had dealt only with Mr. Ryal. Ryal was an insurance broker and had no agency agreement with the defendant companies, but he ordered the policies from the Holton Insurance Agency in St. Louis. No application was ever taken from the plaintiff for insurance with the defendants, and Ryal was billed for the premiums by the Holton Insurance Agency. When the policies were orginally written, Ryal told the Holton Agency that the building was occupied. The companies themselves also ascertained by inspection that it was occupied.

After the plaintiff closed his place of business, he went to Mr. Ryal and told him that his business was closed and asked if this would affect his insurance. Ryal assured him that it would be all right if the plaintiff went out to the building occasionally. Ryal never took the matter up with the Holton Agency or the defendant companies. The plaintiff testified that he had a conversation with Mr. Watkins, the other insurance agent with whom he dealt, and he was assured by him that the insurance that he, Watkins, had written would remain in force if plaintiff went to the building occasionally. The companies for which Watkins and Ryal were agents paid their portion of the loss amounting to $13,000. The defendants declined payment on the ground that the policies, by their terms, were suspended because the building was unoccupied beyond a period of 60 days.

■ The respondent contends that the building was occupied and also asserts that the defendants are estopped from raising the defense of non-occupancy. Obviously, however, if the premises were occupied within the terms of the policy, we do not need to consider the question of estoppel. Therefore, the first question we are obliged to determine is whether or not the insured building was "vacant or unoccupied" beyond a period of sixty days at the time the fire which destroyed it occurred. It was not vacant, and there appears to be no dispute about this. All of its fixtures and its stock of merchandise were there. Vacancy usually means empty; a building with nothing in it. Bledsoe v. Farm Bureau Mutual Insurance Co., Mo. App., 341 S.W.2d 626, l. c. 629; Drummond v. Hartford Fire Insurance Company, Mo. App., 343 S.W.2d 84, l. c. 86.

"Unoccupied" is not of such clear meaning. The words in the clause that sus-

pend the insurance have been considered in various opinions in this state and others. A general rule that emerges from the cases is stated in 4 Couch on Insurance, page 3403, § 970:

"In construing such a condition, the courts will look to the subject-matter of the contract, and the construction must be with reference thereto, since the occupancy of the various kinds of buildings insured, such, for instance, as dwellings, barns, churches, public buildings, stores, factories, etc., often is essentially different in its scope and character."

The appellants rely upon the cases of Cook v. Continental Insurance Company, 70 Mo. 610; Craig v. Springfield Fire & Marine Ins. Co., 34 Mo.App. 481; Wheeler v. Phoenix Ins. Co., 53 Mo.App. 446; and Harper v. Stoddard County Mut. Fire Ins. Co., Mo.App., 51 S.W.2d 534. These cases relate to dwelling houses, and in all of them the occupant had either moved from the house, with no intention of further occupying it, or had not yet occupied the house at the time of the fire. Some of these were considered by this Court in the case of Young v. Fidelity & Casualty Co., 202 Mo.App. 319, 215 S.W. 496.

That case arose out of a claim upon a burglary policy. The assured represented that the premises described were occupied by him as his dwelling house. The house there in question was new and not quite completed. Workmen were doing inside painting. The house lacked heat and water. The assured's wife spent her days there, and the assured slept there at times upon a sofa. Upon this state of facts we held, " * * * there is ample evidence in the record to justify the court, sitting as a jury, in finding that the respondent did in fact occupy this house as his dwelling * * *."

We held the same under a somewhat similar state of facts in Florea v. Iowa State Ins. Co., 225 Mo.App. 49, 32 S.W.2d

111, 1. c. 114. This was an action on a fire policy on a dwelling, and we stated:

"Thus we find the rule to be that, where there is no condition or stipulation in the policy whereby the insured obligates himself either to limit or to extend his occupancy to any particular purpose, then any occupancy will suffice which satisfies the letter of the condition of the policy, even though it may be by one who is there possessio pedis, such as a caretaker or watchman, not having the house as his domicile."

See, also, Pabst Brewing Company v. Union Insurance Co., 63 Mo.App. 663; Walton v. Phoenix Insurance Co., 162 Mo.App. 316, 141 S.W. 1138.

The Kansas City Court of Appeals reviewed and discussed many of the cases above cited in Bledsoe v. Farm Bureau Mutual Insurance Co., 341 S.W.2d 626, supra. It stated that the language in some of the cases appears difficult to reconcile with that in others. Each case should be read in the light of its particular facts. With this we are in accord.

The facts before us are that the building was insured as a building "occupied as a recreation hall and package liquor store". These words may be construed as a warranty of the nature of its occupancy rather than words descriptive of the building. Pabst Brewing Company v. Union Insurance Co., 63 Mo.App. 663, supra. Assuming this, we must determine if there was an occupancy within the warranty. The word "occupancy" itself, as used in insurance policies, refers to the presence of persons within the building. This is particularly true as it relates to dwelling houses. They are expected to be places of human habitation where people live and dine and sleep. This cannot be said of a recreation hall and package liquor store, for the nature of the occupancy does not warrant the conclusion. It might be open 24 hours a day or just a few hours under

 

varying circumstances. It certainly does not embrace within its meaning the use of it as a sleeping place. We therefore cannot hold that the word has the same meaning that it would have if applied to a dwelling. With this in mind, we examine the evidence to determine if there was an occupancy within sixty days before the fire.

The plaintiff's evidence was that a week or two before the fire, he and Copeland worked in the place. They were painting it and getting it ready for Copeland to take over. There was some cleaning done, and Copeland sanded the bar to prepare it for varnishing. They worked there three or four hours at a time. Both were present several times late at night in an effort to catch boys breaking in. Copeland said, "A particular night or two I stayed the whole night."

The Supreme Court of Minnesota, in the case of Stensgaard v. National Fire Ins. Co., 36 Minn. 181, 30 N.W. 468, had before it facts almost identical with those before us. There an insured building which had been used as a saloon was being cleaned up and put in readiness for reopening when a fire occurred. The court said:

> "But granting, in defendant's favor, and as is no doubt the fact, that it was adapted to be a saloon, and expected to be used as such, and insured accordingly, plaintiffs' actual physical possession of it, with actual reference to using it as a saloon, and the getting of it in order and making it ready generally for that use, must, in any reasonable sense of the words, be taken to be not only an occupancy and use of the building, but an occupancy and use of it for the purposes of a saloon."

■ We are in accord with the above holding. Considering the scope and character of the occupancy here in question, the insured premises were occupied within the meaning of the policy. Cleaning and repainting the interior of a package liquor store would be an activity consistent with its occupancy as such.

The only point raised by the appellants is that the court erred in not sustaining defendant's motion for a directed verdict at the close of all of the evidence. We hold that the court properly denied the motion.

The judgment is affirmed.

RUDDY, P. J., and ANDERSON, J., concur.