# United States Court of Appeals
## For the First Circuit

No. 01-1074

GRACE LANGILL,

Plaintiff, Appellant,

v.

VERMONT MUTUAL INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Boudin, Chief Judge,
Coffin, Senior Circuit Judge,
and Lynch, Circuit Judge.

Dana A. Curhan, with whom William T. Kennedy was on brief,
for appellant.
John C. Skinner, with whom William O. Monahan was on brief,
for appellee.

October 18, 2001

**COFFIN, <u>Senior Circuit Judge</u>.**   In this Massachusetts diversity case plaintiff-appellant, Grace Langill, the insured owner of a residential property, challenges the invocation by defendant-appellee insurance company, Vermont Mutual Insurance Co., of a statutorily required "vacancy" exclusion in plaintiff's policy, to deny coverage for fire damage to the property.  Appellant appeals from a partial summary judgment granted to defendant prior to trial.  We affirm.

### Factual Background

The insured premises are a rental dwelling at 158 Mansfield Avenue (158) in Norton, Massachusetts, some thirty-five to forty feet away from appellant's own residence at 156 Mansfield Avenue.  In February 1999, two tenants who had lived at 158 for twelve years  moved out, leaving the property in a condition showing considerable wear and tear.  Soon after their departure, appellant's husband undertook to refurbish the house by cleaning, removing debris, filling nail holes, painting walls, repairing several windows, and installing Venetian blinds. During this period, doors were kept locked, utilities were maintained, and heating oil was supplied.  In the premises were Mr. Langill's tools, a step ladder, two chairs, a mattress, frame and box spring, a radio and an ash tray.

It was Mr. Langill's practice to spend one to two hours a day working at 158 starting at 11:00 a.m. or noon. A longer time would place undue strain on his arm. He would sometimes visit the premises at night to smoke or meet with friends; he had coffee there with a friend six or seven times. On one night, after an argument with appellant, he had stayed all night.

On May 4, 1999, Mr. Langill was at 158 from 10:30 a.m. until approximately noon. He spent the rest of the day at his house, save a visit to a store to buy a newspaper. At 2:00 a.m. on May 5, he was awakened by appellant and saw "a big orange ball" of fire at 158. By this time the fire was well advanced on one wall. The Norton Fire Investigator concluded that the fire was an arson.

Appellant's "Dwelling Fire Policy" included, as required by Massachusetts General Laws ch. 175, § 99, the following exclusionary clause:

> 27. Vacancy. Unless otherwise provided in writing, we will not be liable for loss caused by fire or lightning occurring while a described building is vacant, whether intended for occupancy by owner or tenant, beyond a period of sixty consecutive days for residential purposes of three units or less, and thirty consecutive days for all other residential purposes.

-4-

The question presented to us and to the district court is whether under Massachusetts law, the undisputed facts depict a dwelling that had been, at the time of the fire, "vacant" for more than sixty consecutive days. This is a matter of law and our review is de novo. We also are bound by the Massachusetts rule that "[b]ecause the language of the standard policy is prescribed by statute . . . , the rule of construction resolving ambiguities in a policy against the insurer is inapplicable. . . . Instead, we must ascertain the fair meaning of the language used, as applied to the subject matter." Bilodeau v. Lumbermens Mut. Cas. Co., 392 Mass. 537, 541, 467 N.E.2d 137, 140 (1984) (internal citations and quotations omitted).

Two Massachusetts cases have been called to our attention. The earlier is Will Realty Corp. v. Transportation Ins. Co., 22 Mass. App. Ct. 918, 492 N.E.2d 372 (1986). After a tenant was evicted and left a rundown house, the windows were boarded and the only activity occurred on two days when workmen removed from the house doors, windows and sinks. A fire destroyed the building several months later. In reversing a ruling that the property had not been "vacant," the court said, "the policy provision reflects the commonplace observation that the risk of casualty is higher when premises remain unattended. . . .

[P]remises may be vacant despite sporadic entry."  22 Mass. App. Ct. at 919, 492 N.E.2d at 373.

A more recent case is helpful, not so much in its precise holding, as in its discussion of policy underlying the "vacancy" exclusion. See Aguiar v. Generali Assicurazioni Ins. Co., 47 Mass. App. Ct. 687, 715 N.E.2d 1046 (1999).  A restaurant, which had closed for the season on Labor Day, was destroyed by fire approximately two months later.[1]  Before the fire, the restaurant had been unoccupied and utilities had been shut off.  In affirming the trial court's ruling that the property had been vacant for the required period, the appeals court "illuminated why an insurer would be concerned about an unoccupied building" by explaining that arsonists had attempted to destroy the building several times in the months before they ultimately succeeded. 47 Mass. App. Ct. at 689, 715 N.E.2d at 1047. Moreover, in discussing the insured's argument that he reasonably expected to be covered under the insurance policy, the court commented:

> [w]hen reasonable expectations analysis comes into play, it is more likely to do so when the task is to interpret an ambiguous provision rather than an unambiguous one whose meaning, as in this case, no one

---

[1]At the time, Mass. Gen. Laws ch. 175, § 99 provided for a vacancy period of only thirty days before the vacancy exclusion could be invoked.

> disputes. . . . They could not reasonably have
> expected that leaving the building vacant did not
> alter the underwriting condition.

47 Mass. App. Ct. at 691, 715 N.E.2d at 1048.

Neither case neatly covers the facts in the case at bar. In both cases no activity was going on in the premises. In Aguiar, at least, the premises were not devoid of contents. It is clear, however, that the court was not equating "vacant" with "abandonment," as do some jurisdictions. See, e.g., Jerry v. Kentucky Cent. Ins. Co., 836 S.W.2d 812, 815 (Tex. App. 1992) ("entire abandonment"). It is also clear that having the building "attended" and "occupied" is the central theme.

The question remains whether this requirement can be satisfied by regular visits and activities, although of relatively brief nature, by someone other than a resident of the building. We are helped by reflecting on the reasons underlying vacancy exclusions. In considering the vacancy exclusion of a policy insuring a warehouse, the Fourth Circuit explained:

> When a building is not in use, it is more likely that
> potential fire hazards will remain undiscovered or
> unremedied. Chances are also greater that a fire in
> a vacant building will burn for a longer period and
> cause greater damage before being detected.

Catalina Enter. v. Hartford Fire Ins. Co., 67 F.3d 63, 66 (4th Cir. 1993). Surely, these considerations are even more applicable to one insuring a dwelling.

When we review the undisputed facts of this case, in light of these policy concerns, we can readily see their lack of fit. That is, the approximation to an inhabited abode is not measurably advanced by the motley and sparse inventory of chairs, mattress, and step ladder. Nor does the midday hour or so of work activity convey the appearance of residential living. And random evening visits hardly provide the appearance of somebody being at home or effective anti-vandal protection. The fact is that none of the activities of Mr. Langill or others changed the fact that at the critical and likely times for vandalism and arson, there was no one in the house to discourage, see, or hear marauders, or to hear the activation of smoke detectors.

A recent New York case seems both apposite and persuasive. In Lamoureux v. New York Cent. Mut. Fire Ins. Co., 244 A.D.2d 645, 663 N.Y.S.2d 914 (N.Y. App. Div. 1997), the insured building was a one-family residence located adjacent to and behind plaintiff's residence. The premises were destroyed by fire three months after the plaintiff's tenant had moved out. The policy excluded coverage for loss if the building were vacant over 60 consecutive days. Plaintiff's principal challenge to a finding of vacancy was that he was personally renovating the house and was inside the building every day for

-8-

a couple of hours.  The court reversed the trial court's denial of the insurer's motion for summary judgment, "[g]iving the word vacant its plain and ordinary meaning. . . ."  244 A.D.2d at 646, 663 N.Y.S.2d at 915.  It also ruled that because "plaintiff himself was never an inhabitant of the premises, the fact that he frequented the premises for the purpose of renovation is not germane to the issue of vacancy."  Id.

We think the Massachusetts courts would similarly rule on the record before us.  When we consider the nature of the hazard sought to be guarded against,  the sustained presence of a resident, particularly in the hours of darkness, appears logically as the critical factor where the premises are a dwelling.  Of course, this also assumes the presence of furnishings and amenities "minimally necessary for human habitation."  American Mut. Fire Ins. Co. v. Durrence, 872 F.2d 378, 379 (11th Cir. 1989).

We recognize, as this case illustrates, that there is a wide continuum between residency and absolute absence of human presence from the premises.  And we do not intend to foreclose the possibility of a set of facts not involving a resident but so paralleling the conditions of residency as to avoid application of the exclusion clause.  But we think that in general the multi-factor approach urged by appellant is

-9-

inconsistent with Massachusetts law. What seems preeminent in this insurance context, for both insurer and insured, is predictability. To the extent that a multi-factor approach is suggested, such as including the presence or absence of tenants, the habitability or absence thereof, the number, nature, duration, and regularity of activities and visits by non-residents, and the proximity of the insured site to the residence, any predictability is fatally compromised.

Appellant has vigorously invoked dictionary definitions and case law to serve his purpose. As might be suspected, where a host of things can be spoken of as "vacant," from rooms and houses to stores, positions, and expressions, definitions are legion. Appellant has relied on those that stress a space being "devoid of contents." Webster's New World Dictionary, 1968 ed., p. 1606. This is a perfectly good definition but it has been impliedly rejected by Aquiar. Moreover, reference to absence of contents would be more relevant if one were considering whether a warehouse were vacant. The absence of that for which the premises were intended to be used would seem to be the proper object of inquiry. Appellee's choice of another of Webster's definitions seems more of a fit: "untenanted; not in use, as a room or a house." Id. We note as well that the language of the provision, "whether intended for occupancy by owner or tenant,"

-10-

directs us to give no special consideration to purpose of the building as one to rented rather than one to be used by appellant.

Appellant's reliance on cases illustrates the hazard of focusing on text to the exclusion of context. For example, cases are cited for the proposition that efforts to rehabilitate property preclude a finding of vacancy. See Knight v. United States Fid. & Guar. Co., 123 Ga. App. 833, 182 S.E.2d 693 (1971); Limbaugh v. Columbia Ins. Co. of N.Y., 368 S.W.2d 921 (Mo. Ct. App. 1963). Knight involved installing new equipment, painting, and making ready a service station and restaurant for reopening and Limbaugh similar activities to ready a recreation hall and package liquor store for opening. In both cases there were policy exclusions if the premises were "unoccupied" for sixty days. Knight relied on the reasoning of Limbaugh, in which the court said:

> The word "occupancy" itself, as used in insurance policies, refers to the presence of persons within the building. This is particularly true as it relates to dwelling houses. They are expected to be places of human habitation where people live and dine and sleep. This cannot be said of a recreation hall and package liquor store, for the nature of the occupancy does not warrant the conclusion.

Limbaugh, 368 S.W.2d at 924. The court accordingly held that cleaning and repainting the interior of the liquor store "would

-11-

be an activity consistent with its occupation as such." Id. at 925.

Not only does the meaning of "vacancy" depend on the type of premises involved, but also the type of insurance policy. Appellant seeks comfort from Ellmex Constr. Co., Inc. v. Republic Ins. Co., 202 N.J. Super. 195, 494 A.2d 339 (N.J. Super. Ct. App. Div. 1985), which held that the presence in a model home of realtors for four days every week constituted sufficient presence to defeat a thirty day vacancy exclusion clause. But the court noted that the policy involved was a "builder's risk" policy, which should not be interpreted as are policies insuring ordinary homeowners. 202 N.J. Super. at 204, 494 A.2d at 344. The latter policies, observed the court, "may, and usually do, require the insured dwelling to be occupied as a place of abode." 202 N.J. Super. at 203-04, 494 A.2d at 343. It consequently felt free to depart from this standard and, resolving ambiguity against the insurer, held that defendant had not required that the premises be "occupied" twenty-four hours per day.

Finally, it is important to distinguish cases according wide elasticity to the word "occupancy," after finding the word ambiguous and construing the term in favor of the insured. See Smith v. Lumbermen's Mut. Ins. Co., 101 Mich. App. 78, 300

-12-

N.W.2d 457 (1981); Drummond v. Hartford Fire Ins. Co., 343 S.W.2d 84 (Mo. Ct. App. 1960). In Smith, the court held that where the insurer knew that a dwelling was under a contract of sale, a temporary vacancy pending arrival of the new resident-owner was "not within the vacancy clause, absent a clear expression of intent in the insurance policy." 101 Mich. App. at 86, 300 N.W.2d at 460. Likewise, in Drummond the court, relying on early precedent, held that the presence of a caretaker one day and night each week during the specified vacancy period constituted "possessio pedis" and was sufficient. 343 S.W.2d at 87. Suffice it to say that neither case would be considered relevant in interpreting the mandatory vacancy provision under Massachusetts law.

Affirmed.