RUBEN ROJAS AND FABIOLA ROJAS, APPELLANTS, V.
SCOTTSDALE INSURANCE COMPANY, APPELLEE.

678 N.W.2d 527

Filed April 29, 2004.   No. S-03-557.

Ralph E. Peppard for appellants.

Robert F. Bartle, of Bartle & Geier Law Firm, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Ruben Rojas and Fabiola Rojas filed a petition in the district court for Douglas County against Scottsdale Insurance Company (Scottsdale) seeking a judgment in the amount of their dwelling insurance policy limits. The insured real property had been damaged by fire, but Scottsdale refused payment on the basis of a policy endorsement which provided that Scottsdale would not be liable for loss occurring while the insured property was vacant or unoccupied. In its answer, Scottsdale alleged that coverage was denied because the property had been unoccupied for more than 60 days prior to the fire. Both parties moved for summary judgment. The district court determined that the denial of coverage was proper. The district court denied the Rojases' motion but sustained Scottsdale's motion and dismissed the Rojases' petition. The Rojases appeal. We affirm.

## STATEMENT OF FACTS

The following facts are derived from the evidence admitted from the summary judgment proceedings: In early 2001, the Rojases purchased a piece of improved real property in Omaha, Nebraska, in a tax foreclosure sale. The Rojases intended to and

did use the property as rental property. The Rojases applied to Scottsdale for an insurance policy covering the property on February 12, 2002, and Scottsdale subsequently issued a policy titled "Dwelling Policy." The policy included "Occupancy Endorsement" No. UTS-32g, which provided as follows:

It is a condition of this policy that the described building must be occupied at the inception date of the policy. It is a further condition of this policy that any vacancy or unoccupancy of the described building after the inception date of the policy must be reported to the Company within thirty (30) days.

The Company shall not be liable for loss occurring while a described building, whether intended for occupancy by owner or tenant, is vacant, or unoccupied for more than sixty (60) consecutive days immediately before the loss.

The terms "vacancy," "vacant," "unoccupancy," and "unoccupied" are not defined in the policy.

Although not controlling to our determination, we note that the policy also contained a provision regarding coverage with respect to glass or safety glazing material. This provision stated that the policy covered loss caused by the breakage of glass or safety glazing material. The glass provision stated that such coverage did not include loss "if the dwelling has been vacant for more than 30 consecutive days immediately before the loss" and specified that "[a] dwelling being constructed in [sic] not considered vacant."

The Rojases evicted the tenants of the property on March 21, 2002. After the eviction, the Rojases began making repairs and improvements to the property. According to the evidence, from March 21 until July 8, the Rojases or their workers were present on the property approximately 3 days per week to make improvements.

On July 8, 2002, the property was extensively damaged by fire. The parties do not dispute that the damage to the property exceeded the insurance policy limits of $35,000. The Rojases filed a claim with Scottsdale under the policy. Scottsdale denied the claim on the basis of the occupancy endorsement. In correspondence to the Rojases' counsel, Scottsdale stated that "[a] dwelling under renovation does not constitute occupancy."

The Rojases filed a petition against Scottsdale on October 25, 2002, seeking judgment in the amount of the $35,000 policy limit plus damages for bad faith denial. Scottsdale answered, asserting that coverage was not provided because the premises had remained "unoccupied" for more than 60 days prior to the fire.

The Rojases subsequently filed a motion for summary judgment. The Rojases claimed the property was not vacant. In arguing in favor of summary judgment, the Rojases relied in part on the coverage provision regarding "Glass Or Safety Glazing Material" which stated that "[a] dwelling being constructed in [sic] not considered vacant." The district court rejected the Rojases' arguments and overruled their motion for summary judgment. Scottsdale also filed a motion for summary judgment. Following a hearing, the district court concluded that there was no genuine dispute between the parties regarding the material underlying facts and that "the plain meaning of the language of the policy and its endorsements excludes the premises from coverage when there is no one actually residing in the premises." We understand the district court's ruling to mean that it agreed with Scottsdale that the evidence showed no genuine issue as to the material fact that the property had been unoccupied for more than 60 days prior to the fire. The district court sustained Scottsdale's motion for summary judgment and dismissed the Rojases' petition on April 24, 2003. The Rojases appeal.

## ASSIGNMENT OF ERROR

The Rojases assert that the district court erred in denying their motion for summary judgment and sustaining Scottsdale's motion for summary judgment because the court erred in its interpretation of the occupancy endorsement provision of the insurance contract.

## STANDARDS OF REVIEW

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Misle v. HJA, Inc., ante* p. 375, 674 N.W.2d 257 (2004).

■ Although the denial of a motion for summary judgment, standing alone, is not a final, appealable order, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct further proceedings as it deems just. *Unisys Corp. v. Nebraska Life & Health Ins. Guar. Assn., ante* p. 158, 673 N.W.2d 15 (2004).

■ The interpretation of an insurance policy is a question of law, in connection with which an appellate court has an obligation to reach its own conclusions independently of the determination made by the lower court. *Guerrier v. Mid-Century Ins. Co.,* 266 Neb. 150, 663 N.W.2d 131 (2003).

## ANALYSIS

*Introduction.*

In rejecting the Rojases' motion for summary judgment and sustaining Scottsdale's motion for summary judgment, the district court determined that the policy endorsement in this case "excludes the premises from coverage when there is no one actually residing in the premises." The court further determined that the sporadic presence of the Rojases and their workers to make renovations did not rise to the level of residency. We determine that the district court did not err as to either the law or the facts in determining that there was no coverage because the property was in effect "unoccupied" for more than 60 days prior to the fire. The court therefore did not err in denying the Rojases' motion for summary judgment and sustaining Scottsdale's motion for summary judgment.

The resolution of this appeal requires us to explain the terms "vacant" and "unoccupied" in the policy Scottsdale issued to the Rojases as a matter of law and then to determine on the record presented whether the property was either "vacant" or "unoccupied" under such definitions at the time of the fire as a matter of fact. It has been stated, and we agree, that "[t]he interpretation of the words 'vacant' and 'unoccupied' as used in an insurance policy is a question of law, but whether the subject dwelling was

vacant or unoccupied at the time of the loss is a question of fact." *Lundquist v. Allstate Ins. Co.*, 314 Ill. App. 3d 240, 245, 732 N.E.2d 627, 631, 247 Ill. Dec. 572, 576 (2000). In our analysis, after first noting that the terms "vacant" and "unoccupied" are phrased in the disjunctive in the policy, we consider as a question of law the meaning of the policy terms "vacated" and "unoccupied" and then consider with reference to the undisputed facts in the record whether the district court correctly determined that the property in this case was unoccupied at the time of the fire.

### Policy Language is Disjunctive.

The occupancy endorsement provides that Scottsdale "shall not be liable for loss occurring while a described building, whether intended for occupancy by owner or tenant, is vacant, or unoccupied for more than sixty (60) consecutive days immediately before the loss." We note that the occupancy endorsement provides in the disjunctive that Scottsdale is not liable if the property is either "vacant, or unoccupied." Because of this, if the property was either vacant or unoccupied, there would be no coverage. See *Alcock v. Farmers Mut. Fire Ins. Co.*, 591 S.W.2d 126, 128 (Mo. App. 1979) (" 'vacant' and 'unoccupied' " language in policy "is clearly in the disjunctive, indicating that either a condition of vacancy or unoccupancy extending for a period of sixty days constitutes a defense to a policyholder claim"). In the instant case, the district court found that the property was unoccupied.

### Question of Law: Meaning of Policy Terms "Vacant" and "Unoccupied."

The terms "vacant" and "unoccupied" are not defined in the policy. The terms are not synonymous. 6 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 94:135 (1997). In defining "vacant," Black's Law Dictionary notes that "[c]ourts have sometimes distinguished *vacant* from *unoccupied*, holding that *vacant* means completely empty while *unoccupied* means not routinely characterized by the presence of human beings." Black's Law Dictionary 1546 (7th ed. 1999). In an earlier edition, Black's defined "vacant" as follows: " 'In fire policy insuring dwelling, term "vacant" means empty, without inanimate objects, deprived

of contents; a thing is vacant when there is nothing in it; "vacant" means abandoned and not used for any purpose.'" Black's Law Dictionary 1548 (6th ed. 1990). The same edition defined "unoccupied," in part, as follows:

> Within fire policy exempting insurer from liability in case dwelling is "unoccupied," means when it is not used as a residence, when it is no longer used for the accustomed and ordinary purposes of a dwelling or place of abode, or when it is not the place of usual return . . . .

*Id.* at 1538. Courts have similarly defined the two terms. For example, the U.S. Court of Appeals for the Seventh Circuit, interpreting Illinois law, stated that the terms "vacant" and "unoccupied" are not synonymous and noted that "vacant" focuses on the lack of animate or inanimate objects, while "unoccupied" focuses on the lack of animate objects. *Myers v. Merrimack Mut. Fire Ins. Co.*, 788 F.2d 468, 471 (7th Cir. 1986). The Court of Appeals of Oregon recently noted that " ' "a house may be unoccupied, and yet not be vacant . . . a dwelling is 'unoccupied' when it has ceased to be a customary place of habitation or abode." ' " *Schmidt v. Underwriters at Lloyds of London*, 191 Or. App. 340, 345, 82 P.3d 649, 652 (2004) (quoting *Schoeneman v. Hartford Fire Ins. Co.*, 125 Or. 571, 267 P. 815 (1928)).

Although denial of coverage would be warranted if the property was either vacant or unoccupied for the requisite time, the Rojases nevertheless point to the policy provision relating to broken glass wherein a dwelling under construction is "not considered vacant." The Rojases argue that because the property was undergoing renovation, it was "under construction" and was not vacant under the broken glass provision and should similarly not be considered vacant under the occupancy endorsement. This argument is unavailing for several reasons, the most important being that coverage was properly controlled and denied under the occupancy endorsement, and, based on the evidence, the trial court properly found as a matter of fact that the property was unoccupied. Under the controlling disjunctive language of the occupancy endorsement, denial of coverage was proper where the property was unoccupied, regardless of whether or not it was vacant.

*Question of Fact: Was Property Either
"Vacant" or "Unoccupied"?*

The uncontroverted evidence in this case establishes that the Rojases evicted the tenants of the property on March 21, 2002, and that the property was damaged by fire on July 8. The evidence regarding use of the property in the 60 consecutive days immediately before July 8 is that from March 21 until July 8, the Rojases or their workers were present on the property approximately 3 days per week to make improvements. The only reasonable factual inference from the evidence is that after the tenants were evicted on March 21, no one occupied the property. That is, from March 21 to July 8, there was a lack of habitation by human beings and a lack of use for the accustomed and ordinary purposes of a dwelling or place of abode and, therefore, the property was unoccupied.

For completeness, we note that the Rojases also argue in the alternative that the property was "occupied" during the requisite time because they or their workers were present approximately 3 days per week making improvements. In this regard, we note that other courts have rejected such an assertion under similar facts. See, generally, *Vennemann v. Badger Mut. Ins. Co.*, 334 F.3d 772 (8th Cir. 2003) (sporadic nighttime visits and remodeling projects did not convey appearance of residential living).

We make special note of the fact that the property was used and insured as a "dwelling," and we determine that this attribute of the policy is relevant to the factual determination of whether the property was vacant or unoccupied. In *Vennemann*, the U.S. Court of Appeals for the Eighth Circuit noted that coverage should be considered "[i]n light of the reasons for the inclusion of [an occupancy clause] in a homeowner's insurance policy," 334 F.3d at 774, and that the focus is on "the presence or absence of objects or activities customary for the property's intended use," *id.* at 773. In *Langill v. Vermont Mut. Ins. Co.*, 268 F.3d 46, 48 (1st Cir. 2001), the U.S. Court of Appeals for the First Circuit noted that the coverage determination is "helped by reflecting on the reasons underlying vacancy [or occupancy] exclusions." The court in *Langill* stated that those reasons include the concern that when a building is not in use, it is more likely that potential fire hazards will go undiscovered and that a fire in a vacant or unoccupied

building will burn for a longer period and cause greater damage before being detected. *Id.* The court in *Langill* stated, "When we consider the nature of the hazard sought to be guarded against, the sustained presence of a resident, particularly in the hours of darkness, appears logically as the critical factor where the premises are a dwelling." 268 F.3d at 49.

The policy in this case was titled "Dwelling Policy," and it is undisputed that the parties understood the policy was to provide insurance for a dwelling. The reasonable and ultimate inference from the evidence presented by the parties is that no one was using the property as a place of residence from the time the tenants were evicted on March 21, 2002, until the fire occurred on July 8. Therefore, the district court did not err when it determined that the property was "unoccupied" under the terms of the occupancy endorsement for more than 60 days immediately before the loss and, therefore, coverage was properly denied. Scottsdale was entitled to judgment as a matter of law.

## CONCLUSION

This appeal is resolved by reference to the law, the evidence, and the ultimate inference from the evidence. The district court did not err as to the law or in its determination that the property was "unoccupied" within the meaning of the occupancy endorsement for more than 60 days immediately before the fire on July 8, 2002, and that therefore, Scottsdale was not liable for the loss. The district court did not err in denying the Rojases' motion for summary judgment and in sustaining Scottsdale's motion for summary judgment and dismissing the petition. We therefore affirm the district court's judgment.

AFFIRMED.

GERRARD, J., not participating.