# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

COURT OF APPEALS DIV I
STATE OF WASHINGTON
2015 APR -6 AM 9: 08
FILED

| | | |
|---|---|---|
| KUT SUEN LUI and MAY FAR LUI, | ) | NO. 72835-1-I |
| | ) | |
| Respondents, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| ESSEX INSURANCE COMPANY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 6, 2015 |
| | ) | |

LAU, J. — After a vacant building owned by Kut Suen and May Far Lui was damaged by a frozen water pipe, Essex Insurance Co. denied coverage for the property loss because the Luis' insurance policy excluded losses due to water damage when the building is vacant. On the parties' cross motions for summary judgment, the trial court granted the Luis' motion and denied Essex's motion.[1] It concluded that the policy's vacancy provisions are ambiguous and construed the policy in favor of the Luis. But because the plain language of the policy unambiguously denies coverage for water

---

[1] Essex does not appeal the trial court's denial of its motion for summary judgment.

damage at the inception of any vacancy, we reverse and remand for further proceedings.

## FACTS

The main facts are undisputed. Kut Suen and May Far Lui owned a three-story building containing tenant space. On or about January 1, 2011, a water pipe froze and burst, causing substantial damage to the building. No tenant occupied the building at the time. The previous tenant, The Agape Foundation Inc., was evicted around December 7, 2010, for failure to pay rent. Upon discovering the damage, the Luis notified Essex Insurance Co., their insurance provider. Essex investigated the Luis' insurance claim and ultimately paid the Luis $293,578.05 for property damage. When Essex learned that the building was vacant during the time of the loss, it denied coverage of their insurance claim. In a letter to the Luis' attorney, Essex explained that the vacancy endorsement in the Luis' insurance policy prevented coverage for water damage occurring when the building is vacant. Essex stated that although it would refrain from seeking reimbursement for the almost $300,000 already paid, it would no longer provide any coverage for the loss:

> This letter explains the reasons why Essex must deny your clients' claim based on the investigation to date.
>
> First, the policy contains a Change of Conditions Endorsement, which I copy here at Appendix A. This Endorsement was specifically endorsed to the policy over the past few years. As you will see, the Endorsement states:
>
>> Effective at the inception of any vacancy or unoccupancy, the Causes of Loss provided by this policy are limited to Fire, Lightening, Explosion, Windstorm or Hail, Smoke, Aircraft or Vehicles, Riot or Civil Commotion, unless prior approval has been obtained from the Company.

In this situation, the subject building was vacant and unoccupied at the time of the loss. The insurance company was never notified of the vacancy until after the loss, and hence never approved coverage beyond the named perils listed in the Endorsement. The cause of the January 1, 2011 loss was not one of the perils named in the Change of Conditions Endorsement. Therefore, the insurance company cannot provide coverage for the claimed loss.

The Luis sued Essex[2] for the remainder of the total claimed amount.[3] Both the Luis and Essex filed cross motions for summary judgment. The Luis argued that the policy's vacancy provisions did not restrict insurance coverage until after 60 consecutive days of vacancy occurred. The Luis also claimed that (1) Essex waived its right to deny coverage, (2) Essex was estopped from claiming the vacancy provision in the policy restricted coverage, and (3) Essex denied coverage in bad faith. Essex argued in its motion for summary judgment that the policy's vacancy provisions trigger at the inception of any vacancy and, therefore, unambiguously deny coverage for the Luis' claim.

The trial court denied Essex's motion for summary judgment and granted partial summary judgment in favor of the Luis, concluding that the vacancy endorsement is ambiguous and construing the endorsement in favor of the Luis. The trial court declined to grant summary judgment on the Luis' remaining claims of waiver, estoppel, and bad faith due to genuine issues of material fact: "I'm not making a determination on estoppel or waiver, and I'm not granting the plaintiff's motion for bad faith. I believe there are issues of fact that govern all those latter issues." Report of Proceedings

---

[2] The Luis initially included Avila & Sorenson Inc., as a defendant but later dismissed it from the case. Avila is not part of this appeal.

[3] The Luis' insurance claim totaled $758,863.31—$465,285.26 more than what Essex had already paid at the time the Luis filed the lawsuit.

(Aug. 30, 2015) at 25. The trial court's ruling addressed the sole issue of whether the vacancy endorsement denied the Luis' insurance coverage.

Essex moved for reconsideration. Alternatively, Essex requested that the trial court certify its ruling for interlocutory appeal under RAP 2.3(b)(4). The trial court denied Essex's reconsideration motion but granted the motion to certify. Under RAP 2.3(b)(4), the trial court certified its prior ruling that the vacancy provision did not suspend coverage of the Luis' insurance claim. Therefore, the sole issue in this interlocutory appeal is the interpretation of the vacancy provision:

> The Court finds that its legal interpretation of the insurance policy language is a novel controlling question of law about which there are grounds for disagreement. There are no material issues of fact on which the Court's interpretation depends. . . . [A]ppellate review will determine whether Plaintiff's remaining claims should proceed to trial.

Accordingly, the Luis' remaining claims of waiver, estoppel, and bad faith are not properly before us.

ANALYSIS

Standard of Review

This court reviews an order granting summary judgment de novo, performing the same inquiry as the trial court. Sheikh v. Choe, 156 Wn.2d 441, 447, 128 P.3d 574 (2006). Granting summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); see Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). Interpretation of an insurance contract is a question of law reviewed de novo. Woo v. Fireman's Fund Ins. Co., 161 Wn.2d 43, 52, 164 P.3d 454 (2007).

-4-

72835-1-I/5

The Vacancy Endorsement

The parties dispute whether the vacancy endorsement in the insurance contract requires an insured building to be vacant for 60 days[4] before coverage is limited. The vacancy endorsement provides:

## VACANCY OR UNOCCUPANCY

Coverage under this policy is suspended while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days, unless permission for such vacancy or unoccupancy is granted hereon in writing and an additional premium is paid for such vacancy or unoccupancy.

Effective, at the inception of any vacancy or unoccupancy, the Causes of Loss provided by this policy are limited to Fire, Lightning, Explosion, Windstorm or Hail, Smoke, Aircraft or Vehicles, Riot or Civil Commotion, unless prior approval has been obtained from the Company.

(Boldface omitted.) The policy provides a specific definition for "vacancy" in the building and personal property coverage form:

6. Vacancy
   a. Description of Terms
      (1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in 1(a) and 1(b) below.
          . . .
      (b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:
          (i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or
          (ii) Used by the building owner to conduct customary operations.
      (2) Buildings under construction or renovation are not considered vacant.

_____

[4] The parties agree that the damage occurred before the building had been vacant for 60 days.

-5-

      b. Vacancy Provisions

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

    (a) Vandalism;

    (b) Sprinkler leakage, unless you have protected the system against freezing;

    (c) Building glass breakage;

    (d) Water damage;

    (e) Theft; or

    (f) Attempted theft.

(2) With respect to Covered Causes of Loss other than those listed in b.(1)(a) through b.(1)(f) above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

(Boldface omitted.) Essex argues these provisions are unambiguous. It contends the vacancy provisions mean that, absent written permission and additional premium, the instant a building becomes "vacant" (i.e., "at the inception of any vacancy . . . ."), it is covered only for the limited causes of loss listed in the second paragraph of the vacancy endorsement (fire, lightning, explosion, windstorm or hail, smoke, aircraft or vehicles, riot or civil commotion). After 60 days of vacancy, coverage is suspended altogether. The Luis respond that the policy is ambiguous and could reasonably be read to mean that "the 'vacancy' condition does not occur until the building has been vacant or unoccupied for sixty days; upon inception of this vacancy condition, i.e., the post-sixty day period, and with payment of an additional premium, Essex provides coverage but the coverage is limited to certain enumerated Causes of Loss." Br. of Resp't at 12. Because the vacancy endorsement's plain language unambiguously restricts coverage at the beginning of any vacancy, we reverse the trial court's grant of summary judgment in the Luis' favor.

## The Vacancy Endorsement is Unambiguous

Insurance policies are construed as contracts. Findlay v. United Pac. Ins. Co., 129 Wn.2d 368, 378, 917 P.2d 116 (1996). Washington courts follow the objective manifestation theory of contracts, looking for the parties' intent as objectively manifested rather than their unexpressed subjective intent. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005). Therefore, courts consider only what the parties wrote, giving words their ordinary, usual, and popular meaning unless the agreement as a whole clearly demonstrates contrary intent. Hearst, 154 Wn.2d at 504. "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to and made a part of the policy." RCW 48.18.520. An insurance policy is construed as a whole, with the policy being given a "'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" Key Tronic Corp. v. Aetna (CIGNA) Fire Underwriters Ins. Co., 124 Wn.2d 618, 627, 881 P.2d 201 (1994) (quoting Queen City Farms, Inc. v. Cent. Nat'l Ins. Co., 126 Wn.2d 50, 65, 882 P.2d 703, 891 P.2d 718 (1994)). Courts harmonize clauses that seem to conflict in order to give effect to all the contract's provisions. Nishikawa v. U.S. Eagle High, LLC, 138 Wn. App. 841, 849, 158 P.3d 1265 (2007). Insurance limitations must be clear and unequivocal. Bordeaux, Inc. v. Am. Safety Ins. Co., 145 Wn. App. 687, 694, 186 P.3d 1188 (2008).

We will find a clause ambiguous only "when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable." Am. Nat'l Fire Ins. Co. v. B&L Trucking & Constr. Co., 134 Wn.2d 413, 428, 951 P.2d 250 (1998). We construe

ambiguity in favor of coverage. Key Tronic, 124 Wn.2d at 630. But we cannot "create ambiguity where none exists." Quadrant Corp. v. Am. States Ins. Co., 154 Wn.2d 165, 171, 110 P.3d 733 (2005). We will not find a contract provision ambiguous simply because it is complex or confusing. McDonald v. State Farm Fire & Cas. Co., 119 Wn.2d 724, 734, 837 P.2d 1000 (1992). Therefore, our task is to determine whether each party's proposed interpretation is reasonable. If both are reasonable, then we must construe the policy in favor of the Luis.

Essex proposes the only reasonable interpretation of the policy. Under Essex's interpretation, the policy alters coverage in two ways, absent written permission to the contrary. First, it restricts coverage to specified causes of loss whenever usage of the insured building drops below 31 percent, i.e., when it becomes "vacant."[5] Second, after 60 consecutive days of vacancy, coverage is suspended altogether.

The plain language of the policy supports this interpretation. The vacancy section of the building and personal property coverage form states that the insured building "is vacant unless 31% of its total square footage is: (i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or (ii) Used by the building owner to conduct customary operations." Therefore, when less than 31 percent of the building is in use, it is "vacant." According to the

---

[5] In its reply brief, Essex argues that "vacancy" and "unoccupancy" have different meanings. Resp't's Reply Br. at 6. Some persuasive authority supports this argument. See, e.g., Rojas v. Scottsdale Ins. Co., 678 N.W.2d 527, 532 (Neb. 2004) ("The terms 'vacant' and 'unoccupied' . . . are not synonymous."). However, the difference between these terms, if any, is irrelevant. The parties here do not dispute whether the building was either vacant or unoccupied or not, they dispute whether the building needed to be vacant or unoccupied for 60 days before the policy restricted coverage.

second paragraph of the vacancy endorsement, "at the inception of any vacancy or unoccupancy, the Causes of Loss provided by this policy are limited to Fire, Lightning, Explosion, Windstorm or Hail, Smoke, Aircraft or Vehicles, Riot or Civil Commotion, unless prior approval has been obtained from the Company." Finally, under the first paragraph of the vacancy endorsement, the policy provides no coverage after 60 days of vacancy, absent written permission: "Coverage under this policy is suspended while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days . . . ."[6]

Insurers use vacancy provisions like this one to reflect the increased risk posed by vacant buildings. See, e.g., Heartland Capital Invs., Inc. v. Grange Mut. Cas. Co., 2010 WL 432333 (C.D. Ill. 2010). Vacant buildings are more susceptible to insurance risks such as fire, trespass, leaks, and other defects that often cause greater damage because they go unnoticed. Rojas v. Scottsdale Ins. Co., 678 N.W.2d 527, 533 (Neb. 2004). Washington courts have recognized that vacancy provisions are reasonable and should be enforced as any other contract provision. Brehm Lumber Co. v. Svea Ins. Co., 36 Wash. 520, 524, 79 P. 34 (1905).

Nevertheless, the Luis argue that the vacancy endorsement is ambiguous. The Luis contend that the vacancy condition in the endorsement is not triggered until the building has been vacant for 60 days. At the inception of this condition, absent written permission to the contrary, coverage is suspended. But with written permission and an

---

[6] The record shows the Luis were aware of Essex's interpretation of the policy in 2004, well before the incident at issue here. Essex partially suspended coverage in 2004 upon discovering the building was vacant. An insurance agent then explained to the Luis that coverage was restricted as soon as the building became vacant. Essex reinstated full coverage when a tenant moved into the property.

additional premium, Essex provides coverage for the enumerated causes of loss in the second paragraph of the endorsement.

The Luis' interpretation is unreasonable because it contravenes the plain language in the vacancy endorsement. Specifically, it overlooks the plain meaning of the phrase "inception at any vacancy." "Inception" means "'an act, process, or instance of beginning.'" Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co., 144 Wn.2d 130, 139, 26 P.3d 910 (2001) (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY 1141 (1981)). And if the policy defines "vacancy" as whenever the building's usage drops below 31 percent of its total square footage,[7] the "inception" or beginning of vacancy would be the instant that condition occurs. Indeed, as Essex notes, this definition of "vacant" is common in insurance policies. Accordingly, many courts have found that an insured building becomes "vacant" when its usage dropped below 31 percent of the total square feet. See, e.g., Heartland, 2010 WL 432333.

The Luis claim "inception" refers to the 60-day requirement in the first paragraph of the endorsement—i.e., vacancy coverage restrictions "incept" on day 61. But this

---

[7] The Luis argue that this definition of vacancy applies only at the moment the policy is issued. They cite section E.6.a.(b), which provides: "When this policy is issued to the owner or general lessee of a building . . . [s]uch building is vacant unless at least 31% of its total square footage is: (i) Rented . . . or (ii) Used by the building owner . . . ." The Luis argue that for a building to be "vacant," less than 31 percent of the building must be in use "when the policy is issued . . . ." But placing this temporal requirement on the vacancy provision nearly eliminates the various coverage provisions related to vacancy in both the policy and the endorsement. The "when" phrase can be more reasonably read to distinguish between when the policy is issued to an owner and when the policy is issued to a tenant. Indeed, the policy provides a separate definition for vacancy "when [it] is issued to a tenant," rather than an owner. Otherwise, as long as a building was not "vacant" at the moment the policy was issued, it would never be vacant regardless of its usage.

ignores the plain language of the second paragraph, which unambiguously states that coverage is limited "at the inception of <u>any</u> vacancy . . . ." (Emphasis added.) The second paragraph places no limit on the vacancy condition restricting coverage—"any" vacancy limits the available causes of loss. Therefore, as explained above, when the insured building satisfies the policy's definition for vacancy, that qualifies as "any vacancy" under the terms of the endorsement, and the inception of that vacancy limits the available causes of loss. Ultimately, the Luis' proposed interpretation improperly integrates the two paragraphs in the endorsement. They apply the 60-day requirement in the first paragraph to the second paragraph despite the fact that the plain language of the endorsement indicates there are separate consequences for (1) the beginning of a vacancy and (2) a vacancy lasting longer than 60 days.

Further, the Luis' interpretation of the endorsement arguably renders the second paragraph superfluous. The first paragraph completely suspends coverage after 60 days of vacancy, while the second paragraph limits the available causes of loss. The second paragraph serves no purpose if it applies only after 60 days of vacancy. No reason exists to limit the available causes of loss after 60 days if, under the first paragraph, no coverage is available at all. "An interpretation of a contract that gives effect to all provisions is favored over an interpretation that renders a provision ineffective, and a court should not disregard language that the parties have used." Snohomish County Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc., 173 Wn.2d 829, 840, 271 P.3d 850 (2012).

The Luis contend that Essex's interpretation of the vacancy endorsement conflicts with other provisions in the policy. Specifically, the Luis point to the vacancy

provisions in section E.6.(b) of the building and personal property coverage form. They claim their interpretation harmonizes the endorsement's provisions with section E.6.(b). But regardless of any conflict between these two sections, the endorsement controls over other policy provisions. Transcon. Ins. Co. v. Wash. Pub. Utils. Dist. Util. Sys., 111 Wn.2d 452, 462, 760 P.2d 337 (1988). The Washington Supreme Court has held that an endorsement controls when it expressly states that it changes the policy:

> An endorsement attached to a policy, which expressly provides that it is subject to the terms, limitations and conditions of the policy, must be read with the policy and will not abrogate or nullify any provision of the policy unless it is so stated in the endorsement. However, if there is ambiguity arising because of the difference of language used in the endorsement and the body of the policy, or between endorsements, the language of the contract is construed most strongly against the insurer.

Transcon., 111 Wn.2d at 462 (emphasis added). Indeed, it is a well-settled principle that endorsements alter and modify the other provisions in an insurance policy. See, e.g., 3 NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION §§ 21.01[1], 21.02[2][a] (Jeffrey E. Thomas & Francis J. Mootz III eds. (2010) ("Endorsements are also often issued to modify or remove the effect of existing terms or exclusions contained in the policy form. In these instances, such an endorsement will supersede the term or exclusion in question.").

Here, the endorsement expressly states that it alters the policy. The endorsement is entitled "CHANGE IN CONDITIONS ENDORSEMENT" and states "Please read carefully as this changes coverage under your policy." (Emphasis added.) The end of the endorsement provides: "Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations

of the above mentioned Policy, <u>other than as above stated</u>."[8] (Emphasis added.) Therefore, in accordance with the plain language of the endorsement, we read the endorsement as superseding the policy, specifically section E.6.b. of the building and personal property coverage form. <u>See</u> <u>Transcon.</u>, 111 Wn.2d at 462 ("As endorsements are later in time, they generally control over inconsistent terms or conditions in a policy."). The Luis fail to cite any authority compelling us to harmonize the endorsement with the policy's other provisions under the circumstances here.

Finally, the Luis cite policy considerations to support their interpretation of the insurance contract. For instance, they argue that Essex's interpretation restricts coverage the instant a building becomes "vacant" and is therefore contrary to the "fundamental protective purpose of insurance." <u>State Farm Fire & Cas. Co. v. Ham & Rye, LLC</u>, 142 Wn. App. 6, 13, 174 P.3d 1175 (2007). Further, they argue that courts view coverage exclusions with strict skepticism:

> The courts liberally construe insurance policies to provide coverage wherever possible. . . . Any remaining ambiguity must be given a meaning and construction most favorable to the insured. Coverage exclusions "are contrary to the fundamental protective purpose of insurance and will not be extended beyond their clear and unequivocal meaning. Exclusions should also be strictly construed against the insurer."

<u>Bordeaux</u>, 145 Wn. App. at 694 (footnotes omitted). But the Luis fail to explain why these considerations should supersede the plain language of the vacancy endorsement.

---

[8] At oral argument, the Luis argued that this provision indicates that the endorsement is not intended to alter the rest of the policy. But that provision states only that the endorsement does not change the policy other than as provided in the endorsement. In other words, the endorsement cannot be read to alter any provisions beyond its plain, unambiguous scope. When provisions in the policy conflict with the plain language in the endorsement, however, we must read the endorsement as controlling. <u>Transcon.</u>, 111 Wn.2d at 462.

If the plain language of the endorsement is unambiguous, we adopt that meaning. Quadrant, 154 Wn.2d at 171 ("Most importantly, if the policy language is clear and unambiguous, we must enforce it as written; we may not modify it or create ambiguity where none exists.").

Alternatively, the Luis argue that even if the vacancy endorsement excludes their claimed loss, the endorsement does not apply because the building was being renovated and therefore was not "vacant." Under the policy's vacancy definition, "Buildings under construction or renovation are not considered vacant." The Luis claim that the building was under renovation because they were preparing for a new tenant. The record shows that the Luis failed to raise this issue below, and we therefore decline to address it on appeal. "As a general rule, appellate courts will not consider issues raised for the first time on appeal." State v. McFarland, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995); RAP 2.5(a).

We also decline to address the Luis' remaining claims for bad faith, waiver, and estoppel. As discussed above, these remaining issues are not properly before us. Both parties agree that the trial court never ruled on these issues. Further, the trial court explicitly stated it was not granting summary judgment on these issues because of remaining issues of fact. The only issue properly before us in this appeal is the coverage question.

## CONCLUSION

Because the plain language of the vacancy endorsement unambiguously limits coverage to only those enumerated causes of loss upon the inception of any vacancy,

we reverse the trial court's ruling construing the endorsement in favor of the Luis.  We reverse the trial court's grant of partial summary judgment and remand for further proceedings.

WE CONCUR:

_____Dan, J._____

_____Trickey, J_____          _____Spearman, C.J._____